# Exhibit A

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JACOB OBERSTEIN | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    Case No.:  1:12-cv-00840-JFM |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

## MOTION FOR A PROTECTIVE ORDER

COMES NOW the named Plaintiff, by and through his undersigned counsel, and respectfully requests this Honorable Court enter an Order to prevent disclosure to the public of any personal identifying information, including Plaintiff's name, within any and all documents relating to the above-cited case, including Plaintiff's Complaint, filed December 6, 2012.

## FACTUAL BACKGROUND

1.    On December 6, 2012, Plaintiff, by and through his undersigned counsel, filed a Complaint against Defendant, United States of America.

2.    The Complaint contains information regarding the Plaintiff's disenrollment from the Uniformed Services University of Health Sciences (USUHS), ████████████████████

████████████████████████████████████████

████████████████████████

3.    Information regarding Plaintiff's disenrollment from USUHS will be damaging to Plaintiff's career in any medical-related field if permitted to be viewed by potential future employers.

## ARGUMENT

In order to protect Plaintiff's future employment eligibility and welfare, Plaintiff respectfully requests his name be removed from any documents relating to the above-cited case that

are made available for public viewing. Rule of the United States Court of Federal Claims 5.2(b) permits the court, for good case, to require redaction of certain information or limit or prohibit a nonparty's remote access to a document filed with the court. Although "good cause" is not defined within the rules, preservation of Plaintiff's future employment eligibility undoubtedly qualifies as good cause. Furthermore, because Plaintiff is only seeking confidentiality for documents made viewable to the public, and not to Defendant, the protective order will not result in harm, undue burden, or delay to any party involved. Additionally, the concealment of Plaintiff's personal identifying information from non-parties will not alter the representation of this case to the public because Plaintiff's name is irrelevant to the facts, circumstances and ultimate outcome of the case.

<u>REQUESTED RELIEF</u>

Plaintiff respectfully proposes that this Honorable Court issue a protective order with the following provisions: (1) Plaintiff's name be redacted from all public documents related to the above-cited case; and (2) Defendant be required to keep all unredacted documents confidential.

Respectfully submitted,


Eric S. Montalvo, Esq.
Founding Partner
The Federal Practice Group
1150 Connecticut Avenue
Suite 900
Washington, D.C. 20036
emontalvo@fedpractice.com
tel. 202-862-4360
fax. 888-899-6053

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the complaint in the above-captioned matter was served on Defendant United States of America on January 3, 2013 at the Office of the Clerk of Court, U.S. Court of Federal Claims, 717 Madison Place N.W., Washington, D.C., 20005 by mailing Complaint to said party via certified mail.

Respectfully submitted,


Eric S. Montalvo, Esq.
Founding Partner
The Federal Practice Group
1150 Connecticut Avenue
Suite 900
Washington, D.C. 20036
emontalvo@fedpractice.com
tel. 202-862-4360
fax. 888-899-6053

Counsel for Plaintiff

# Exhibit B

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JACOB OBERSTEIN,           )
                                      )
        Plaintiff,           )
                                      )
        v.                   )      No. 12-840C
                                      )      (Senior Judge Merow)
THE UNITED STATES,      )
                                      )
        Defendant.      )

## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

Defendant, the United States, respectfully opposes the motion for protective order filed by plaintiff, Jacob Oberstein, on January 3, 2013. Mr. Oberstein fails to establish "good cause" for his request, pursuant to Rule 5.2(e) of the Rules of the Court of Federal Claims (RCFC).

## BACKGROUND

Mr. Oberstein is an active-duty lieutenant in the United States Navy (Navy) and currently serves as a Radiation Health Officer. (Compl. ¶¶ 5, 17-18.) Mr. Oberstein alleges that he was "disenrolled" as a medical student from the Uniformed Services University of Health Sciences (USUHS) ███████████████████████████████████████ ████████████████████ (Id. ¶¶ 12-14.) While enrolled at USUHS, a Federal health science university, Mr. Oberstein was a regular active-duty ensign in the Navy. (Id. ¶¶ 9-10.)

In the instant motion, Mr. Oberstein requests an order that: (1) his name be redacted from all public documents related to this case, and (2) defendant keep all unredacted documents confidential.[1] Plaintiff's Motion For A Protective Order (Mot.) at 2. Mr. Oberstein contends that the requested relief will "protect [his] future employment eligibility and welfare." *Id.*

---

[1] To the extent that any documents in this matter are protected from disclosure by the Privacy Act or Navy regulations, we will keep such documents confidential. *See* 5 U.S.C. § 552a(b); 32 C.F.R. § 701.105.

**ARGUMENT**

RCFC 5.2 generally governs privacy protections for filings made with this Court. Parties

must redact certain information, including: social security numbers; birth dates; financial

account numbers; and, where known to be minors, individuals' names. RCFC 5.2(a). Where

"good cause" is shown, this Court may order redaction of additional information. RCFC 5.2(e).

This Court has discretion to redact or seal a document "if it determines that the public's interest

in access . . . is outweighed by the movant's interests in privacy." *Sieben v. United States*, No.

11-878C, 2012 WL 1440895, at *1 (Fed. Cl. Apr. 20, 2012). The movant "bears the burden . . .

of showing that specific prejudice or harm will if no protective order is granted." *Fed. Trade

Comm'n v. Lights of Am., Inc.*, No. 10-1333, 2011 WL 1515158, at *4 (C.D. Cal. Mar. 31, 2011)

(discussing Fed. R. Civ. P. 5.2(e)); *see, e.g., Sieben*, 2012 WL 1440895, at *1 (noting similarity

between Fed. R. Civ. P. 5.2 and RCFC 5.2).

Mr. Oberstein simply fails to demonstrate good cause for this Court to redact his name

from documents relating to this matter. Mr. Oberstein contends that disclosure of his

disenrollment from USUHS "will be damaging to [his] career in any medical-related field if

permitted to be viewed by potential future employers." Mot. at 1. He thus surmises that

"preservation of Plaintiff's future employment eligibility undoubtedly qualifies as good cause."

*Id.* at 2. However, Mr. Oberstein fails to demonstrate that "specific prejudice or harm" would

result in the absence of a protective order. *See Lights of Am.*, 2011 WL 1515158, at *4. Indeed,

"privacy protection does not generally extend over the individual's name." *Tech Sys., Inc. v.

United States*, No. 10-877C, 2011 WL 4374008, at *1 (Fed. Cl. Sept. 19, 2011).

As an initial matter, Mr. Oberstein ignores that *he voluntarily disclosed* his USUHS

disenrollment to the public. Mr. Oberstein filed his Complaint on December 6, 2012 – almost

one month before filing this motion. Yet, at that time, he apparently made no attempt to file the

Complaint under seal – and only now does he contend that his identity must be withheld. In fact,

by filing the instant motion without filing it under seal, Mr. Oberstein *again* places this

supposedly damaging information within the public domain.

In any event, Mr. Oberstein's contention that disclosing his USUHS disenrollment here

will compromise his "future employment eligibility" is unfounded. If Mr. Oberstein seeks to

practice medicine in the future, ███████████████████████████████████████████

████████████████████████████.[2]████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████.[3]██████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

Alternately, if Mr. Oberstein seeks a position that does not require licensing, or one in which the

employer otherwise would not inquire ███████████████, then Mr. Oberstein fails to

demonstrate any relevance of his USUHS disenrollment to those positions. Indeed, Mr.

Oberstein obtained and continues to hold his current position in the medical industry (as a

Radiation Health Officer), notwithstanding his past ██████ and USUHS disenrollment.

Even if Mr. Oberstein could establish that specific harm would result in public disclosure

– which he cannot do – this Court "must balance the privacy interests of the parties against the

public interest in access to the information." *Diaz-Laboy v. United States*, No. 10-751C, 2012

---

[2] ███████████████████████████

[3] █████████████████████████████████████████████████████████████.

WL 1139749, at *10 (Fed. Cl. Mar. 30, 2012). Mr. Oberstein cannot overcome that his request

runs contrary to longstanding public policy in favor of open court proceedings. There exists a

"presumption of public access to judicial records." *Baystate Techs., Inc. v. Bowers*, 283 Fed.

Appx. 808, 810 (Fed. Cir. 2008). Moreover, courts generally "disfavor" anonymous litigation,

because "[t]he public has an interest in knowing what the judicial system is doing, an interest

frustrated when any part of litigation is conducted in secret." *Doe v. Smith*, 429 F.3d 706, 710

(7th Cir. 2005); *see also, e.g., Adler v. CFA Inst.*, No. 11-1167, 2012 WL 3257822, at *3 (E.D.

Va. Aug. 7, 2012) ("Identifying the parties to judicial proceedings is a vital component of the

courts' facilitation of public access to and public scrutiny of judicial proceedings.").

     As to the public's interest in having access to these proceedings, Mr. Oberstein contends

that his name "is irrelevant to the facts, circumstances and ultimate outcome of the case."[4] Mot.

at 2. However, "[t]he people have a right to know who is using their courts." *Doe v. Blue Cross*

*& Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997). Moreover, that Mr.

Oberstein's USUHS disenrollment may be embarrassing to him and may negatively impact his

future employment, *see* Mot. at 1-2, are not sufficient to override the public's interests. *See, e.g.,*

*Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002) ("[M]any litigants would like

to keep [certain information] confidential . . . but when these things are vital to claims made in

litigation they must be revealed."); *Doe v. Bell Atl. Business Sys. Servs.*, 162 F.R.D. 418, 420 (D.

Mass. 1995) ("Economic harm or mere embarrassment are not sufficient to override the strong

public interest in disclosure of a plaintiff's identity.").

     Thus, Mr. Oberstein fails to demonstrate any specific harm resulting from the disclosure

---

[4] Mr. Oberstein also contends that a protective order "will not result in harm, undue
burden, or delay to any party involved." Mot. at 2. As discussed above, the harm to other parties
is irrelevant for purposes of determining whether to withhold information from public view.

of his identity in this litigation, and in any event, the public's interest in having public legal

proceedings outweighs Mr. Oberstein's privacy interests.  Accordingly, this Court should deny

Mr. Oberstein's request to shield his identity from public view.[5]

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Mr.

Oberstein's motion.

<div style="margin-left:50%">

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

</div>

OF COUNSEL:

MAJ SEAN D. SCHROCK, USMC
LT MATTHEW ROUSH, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
U.S. Department of the Navy
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC  20374


Dated:  January 22, 2013

<div style="margin-left:50%">

/s/ Daniel G. Kim
DANIEL G. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 616-9322
Fax:  (202) 307-0972

Attorneys for Defendant

</div>

---

[5] In the event that this Court determines that Mr. Oberstein's privacy interests outweigh the public's interests, we respectfully request that, in lieu of an order for redaction, the Court order the parties to make all future filings under seal without redaction. *See* RCFC 5.2(d).

# Exhibit C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

JAN 2 5 2013

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| JACOB OBERSTEIN | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

Case No.: 1:12-cv-00840-JFM

## MOTION FOR A PROTECTIVE ORDER

COMES NOW the named Plaintiff, by and through his undersigned counsel, and respectfully requests this Honorable Court enter an Order to prevent disclosure to the public of any personal identifying information, including Plaintiff's name, within any and all documents relating to the above-cited case, including Plaintiff's Complaint, filed December 6, 2012.

## FACTUAL BACKGROUND

1.      On December 6, 2012, Plaintiff, by and through his undersigned counsel, filed a Complaint against Defendant, United States of America.

2.      The Complaint contains information regarding the Plaintiff's disenrollment from the Uniformed Services University of Health Sciences (USUHS), ▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

3.      Information regarding Plaintiff's disenrollment from USUHS will be damaging to Plaintiff's career in any medical-related field if permitted to be viewed by potential future employers.

## ARGUMENT

In order to protect Plaintiff's future employment eligibility and welfare, Plaintiff respectfully requests his name be removed from any documents relating to the above-cited case that are made available for public viewing. Rule of the United States Court of Federal Claims 5.2(b) permits the court, for good case, to require redaction of certain information or limit or prohibit a nonparty's remote access to a document filed with the court. Although "good cause" is not defined within the rules, preservation of Plaintiff's future employment eligibility undoubtedly qualifies as good cause. Furthermore, because Plaintiff is only seeking confidentiality for documents made viewable to the public, and not to Defendant, the protective order will not result in harm, undue burden, or delay to any party involved. Additionally, the concealment of Plaintiff's personal identifying information from non-parties will not alter the representation of this case to the public because Plaintiff's name is irrelevant to the facts, circumstances and ultimate outcome of the case.

## REQUESTED RELIEF

Plaintiff respectfully proposes that this Honorable Court issue a protective order with the following provisions:  (1) Plaintiff's name be redacted from all public documents related to the above-cited case; and (2) Defendant be required to keep all unredacted documents confidential.

Dated  1/3/13

Eric S. Montalvo, Esq.
Founding Partner
**The Federal Practice Group**
**1150 Connecticut Avenue**
**Suite 900**
**Washington, D.C. 20036**
emontalvo@fedpractice.com
tel. 202-862-4360
fax. 888-899-6053

**Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that the complaint in the above-captioned matter was served on Defendant United States of America on January 3, 2013, at the Office of the Clerk of Court, U.S. Court of Federal Claims, 717 Madison Place N.W., Washington, D.C., 20005 by mailing Complaint to said party via certified mail.

Eric S. Montalvo, Esq.
Founding Partner
The Federal Practice Group
1150 Connecticut Avenue
Suite 900
Washington, D.C. 20036
emontalvo@fedpractice.com
tel. 202-862-4360
fax. 888-899-6053

Counsel for Plaintiff

# Exhibit D

# In the United States Court of Federal Claims

No. 12-840 C

(Filed March 12, 2013)

JACOB OBERSTEIN,              )
                             )
                Plaintiff,   )
        v.                   )
                             )
THE UNITED STATES,           )
                Defendant.   )

## ORDER

Plaintiff's Complaint (ECF No. 1), filed December 6, 2012, challenges decisions of the Board for Correction of Naval Records pursuant to 10 U.S.C. § 1552 and asserts plaintiff is entitled to promotion as a matter of law. The dispute concerns whether plaintiff's attendance at the Uniformed Services University of Health Sciences (USUHS) is included in the calculation of military service time, which in turn, impacts eligibility for promotion. After successful completion of two years of the three-year USUHS program, plaintiff was "disenrolled" ████████████ ████████████████████████████████████████████████████████████████████ Plaintiff contends that the time he was enrolled at the USUHS program should be credited, for purposes of seniority and promotion, particularly in determining his date of rank (DOR), credit that he was denied.

Plaintiff has filed a Motion for Protective Order (ECF No. 4), and a Corrected Motion for Protective Order (ECF No. 8). In the Motion plaintiff seeks "an Order to prevent disclosure to the public of any personal identifying information, including Plaintiff's name, with any and all documents relating to [this case], including Plaintiff's Complaint, filed December 6, 2012." (*Id.* at 1.) Defendant has filed a Response. (ECF No. 6.) Plaintiff did not file a Reply. For the following reasons, plaintiff's Motion is denied.

Plaintiff contends that his Complaint, electronically filed on December 6, 2012, "contains information regarding [his] disenrollment from the [USUHS], and specifically discusses ████████████████████████████████████████████████████ ██████████████████████." ("Corrected" Mot. Protective Ord. 1, ECF No.

8.) Plaintiff contends this information "will be damaging to [his] career in any medical-related field if permitted to be viewed by potential future employers." (*Id.* at 2.)

Citing Rule 5.2(b) of the Rules of the Court of Federal Claims (RCFC), which provides for the redaction of certain information from filings, the sealing of documents and issuance of protective orders, plaintiff contends there is good cause to redact his name from these documents or limit or prohibit nonparty remote access. With admission to a requested protective order, defendant would not be prejudiced, plaintiff reasons, although plaintiff does request that defendant keep all unredacted documents confidential. Finally, plaintiff concludes that the public interest in this litigation would not be impacted "because Plaintiff's name is irrelevant to the facts, circumstances and ultimate outcome of the case." (*Id.*)

Defendant disagrees that the circumstances presented constitute the "good cause" required by RCFC 5.2(e), but assures that it will keep confidential any documents that are protected from disclosure by the Privacy Act or Navy regulations. (Def.'s Opp'n Mot. Protective Ord. 1 n.1, ECF No. 6 (citing 5 U.S.C. § 552a(b) and 32 C.F.R. § 701.105).) Defendant points out that plaintiff voluntarily disclosed his disenrollment to the public when he filed his Complaint before he filed his initial Motion for Protective Order (ECF No. 4), and again when he filed his "Corrected" Motion for Protective Order (ECF No. 8), neither of which included a request that it be filed under seal. As for possible impediment to future employment, defendant reasons that if plaintiff seeks to practice medicine in the future, ███████████ ██████████████████████████████████████████████████████. [1]

If plaintiff seeks other employment then the relevance of these ███████████ is not apparent. And, defendant notes that plaintiff's Complaint recites his employment as a Radiation Health Officer, notwithstanding the academic matters he seeks to shield from public view, indicating he is medically-related employable.

Alternatively, defendant adds that even if plaintiff could establish specific harm, relief is not automatic; rather, the court "'must balance the privacy interests of the parties against the public interest in access to the information.'" (*Id.* at 3-4 (citing

---

[1] ████████████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

*Diaz-Laboy v. United States*, No. 10-751C, 2012 WL 1139749, at *10 (Fed. Cl. Mar. 30, 2012).) Citing the presumption of public access to judicial proceedings and the disfavor of anonymous litigation, it is asserted that plaintiff's embarrassment or harm to future employment asserted does not override the public interest in disclosure of his identity.

"There is a strong presumption in favor of a common law right of public access to court proceedings." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)); *see also Baystate Techs., Inc. v. Bowers*, 283 Fed. Appx. 808, 810 2008 WL 2704484, *2 (Fed. Cir. 2008) (unpublished); 28 U.S.C. § 174(b) ("All decisions of the Court of Federal Claims shall be preserved and open to inspection."). Accordingly, a party seeking protection bears the burden of articulating compelling reasons that "outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" *Kamakana v. Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citation omitted). "[T]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* "[M]any litigants would like to keep confidential the salary they make, the injuries they suffered, or the price they agreed to pay under a contract, but when these things are vital to claims made in litigation they must be revealed." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002).

Defendant's comment that any future medical licensing would reveal plaintiff's prior disenrollment and attendant history was not refuted by plaintiff. Plaintiff's noted employment as a Medical Radiation Officer also weighs against harm at the level required. And, as defendant points out, in endeavors outside of medical employment, the relevance and potential harm of prior uncompleted medical school has not been established.

The court also notes that plaintiff's Complaint contains names of other service members in assertedly the same situation. (Compl. 12-13, ¶ 33-34, ECF No. 1 (three names).) This speaks to the credibility of the particularized personal harm plaintiff asserts.

While not involving protected information, this case illustrates why close attention should be given to the warnings of Appendix E governing Electronic Case Filings (ECF). Filings "should not include personal information in any ECF filing unless such inclusion is necessary and relevant to the filings." RCFC, Appendix E, ¶ 26(b). Public access to ECF filings is available at the clerk's office and online. *Id.* ¶ 31. Personal data such as social security numbers, names of minor children, birth dates and financial account numbers should be excluded or redacted, *id.* ¶ 26(c), and "caution" should guide inclusion of other sensitive data such as medical records or employment history, *id.* ¶ 26(d). "Counsel are strongly urged to discuss with all clients the use of personal information so that an informed decision about including, redacting, or excluding such information may be made." *Id.* ¶ 27. Responsibility for protecting personal information is with counsel and the parties, *id.* ¶ 28.

**ACCORDINGLY**, for the foregoing reasons, plaintiff's Corrected Motion for Protective Order (ECF No. 8) is **DENIED**.


s/ James F. Merow
James F. Merow
Senior Judge

- 4 -

# Exhibit E

ORIGINAL

*1/148*

**FILED**

IN THE UNITED STATES COURT OF FEDERAL CLAIM

APR - 3 2013

U.S. COURT OF
FEDERAL CLAIMS

> By leave of the Judge

| | | |
|---|---|---|
| JACOB OBERSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-840C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR RECONSIDERATION

Plaintiff, Jacob Oberstein, pro se, hereby moves this Court, pursuant to RCFC 54 and

RCFC 59, to reconsider its order of March 12, 2013, denying plaintiff's Motion for Protective

Order.

Plaintiff's former counsel, Eric Montalvo, filed a Complaint in this matter on December

6, 2012. Prior to filing the Complaint, Plaintiff repeatedly requested that former counsel

maintain confidentiality of certain sensitive information. Former counsel did not do so. After

the complaint was filed, plaintiff inquired as to why such false and confidential information was

disclosed in the complaint without his knowledge or consent. Former counsel advised plaintiff

that an inquiry would be made with the Court on whether such disclosures could be retracted.

Plaintiff, despite numerous requests for an update on the case, was not informed of any

proceedings until March 21, 2013, approximately nine days after the Court issued an order

denying plaintiff's Corrected Motion for Protective Order. Plaintiff had no knowledge that a

Motion for Protective Order was filed in the first place and was explicitly informed that there

was no activity in the case, as the Defendant's Answer to the complaint was forthcoming. It is

based upon this background that plaintiff now seeks reconsideration of the Court's March 12,

2013 order.

1. __Manifest injustice warrants reconsideration of the Court's order of March 12, 2013.__

A decision to grant a motion for reconsideration is "largely within the discretion" of the court. *Yuba Natural Res., Inc.* v. *United States*, 904 F.2d 1577, 1583 (Fed. Cir.1990). For the court to grant a motion for reconsideration, the movant must "point to a manifest error of law or mistake of fact." *Henderson County Drainage Dist. No. 3* v. *United States*, 55 Fed. Cl. 334, 337 (2003). To warrant reconsideration, the movant must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice. *Matthews* v. *United States*, 73 Fed. Cl. 524, 526 (2006). The court must consider reconsideration motions with "exceptional care." *Carter v. United States*, 207 Ct. Cl. 316, 318 (1975). In a motion for reconsideration under RCFC 59, "manifest" is understood as "clearly apparent or obvious." *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002). Reconsideration is available when the court has "made an error of apprehension" of fact. *L-3 Comm. Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48-49 (2011).

Manifest injustice exists in this matter because this Court likely understood that plaintiff's Motion for Protective Order was made with plaintiff's consent and under advice of former counsel. In fact, plaintiff was not aware of any proceedings relating to the Motion for Protective Order whatsoever, and was surprised to discover that former counsel disclosed plaintiff's confidential information, inaccurately articulated the reasons for why good cause exists to redact portions of the file, and missed the February 1, 2013 deadline to file a reply to Defendant's opposition motion. Former counsel explicitly told plaintiff between December 6,

2012, and March 21, 2013, that there was no activity in the matter, and that former counsel was waiting for Defendant's answer to the Complaint, due by April 5, 2013.

Additionally, Plaintiff's Motion for Protective Order and Defendant's Opposition to Plaintiff's Motion for Protective Order contains factual inaccuracies which may have misinformed the Court. Plaintiff honorably separated from active-duty service on December 31, 2012. Furthermore, plaintiff was not disenrolled for the reason of ▮▮▮▮▮▮▮▮▮▮. Such disclosures are false and were not made voluntarily to the public in both the Motion for Protective Order and in the initial Complaint filed in this matter.

Allowing the Court's order to stand in the face of circumstances which are now brought to the Court's attention, namely, former counsel's misrepresentations and lack of counsel, missed deadlines, and numerous factual inaccuracies in the filings, is manifestly unjust and respectfully warrants reconsideration.

## 2. Good cause exists for granting a protective order in this matter.

"There is a strong presumption in favor of a common law right of public access to court proceedings." *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978)). However, that presumption "is not absolute." *Nixon*, 435 U.S. at 598. "Courts have refused to permit their files to serve as reservoirs of libelous statements…or as sources of…information that might harm a litigant's competitive standing." *Id.* (internal citations omitted). Courts should "consider the degree to which the subject matter is traditionally considered private rather than public…family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh

3

more heavily against access than conduct affecting a substantial portion of the public." *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). "The court should consider the reliability of the information...unverified information should not be as readily disclosed as matters that are verified." *Id.*

In addition to the information specified in RCFC 5.2(a), the court may order redaction of additional information for good cause under RCFC 5.2(e). In the context of discovery, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including...forbidding the disclosure...." RCFC 26(c) (which tracks Fed. R. Civ. P. 26(c)). If the Court may have discretion to prevent certain disclosures in the context of discovery for these reasons, it appears reasonable that such discretion may also be exerted at this preliminary stage of the case.

Plaintiff does not seek to protect public information, legal arguments contained in filed documents, or even the relevant facts of this case. He does not seek to ignore the public's right of access, deprive the public of necessary information, or hamper the Court's consideration and opinion writing. *See In re Violation of Rule 28(D)*, 635 F.3d 1352 (Fed. Cir. 2011). Instead, plaintiff solely seeks that his name be redacted from all filed documents in order to prevent prejudice in the form of harm to his reputation based on the societal stigma associated with disenrollment from an educational institution. The general public does not have a significant need for access to plaintiff's name. Such a safeguard is built into the Federal Rules of Civil Procedure, which are substantially similar to this Court's rules. *See* Advisory Committee Notes to the 2000 Amendment of Rule 26, stating that "[t]he good cause standard...is meant to be flexible."

Plaintiff will suffer specific harm should the record remain unredacted. First, false allegations stemming from former counsel's drafting of the Complaint and Motion for Protective Order are now contained in record and are widely searchable over the internet. It is well known that prospective employers and academic institutions generally conduct searches over the internet in an attempt to research an individual's background, character, and the like, and draw conclusions from such information that is retrieved over the internet. Second, the Complaint contains false allegations regarding a ███████████████████████████. Such a claim may prevent plaintiff from obtaining future entrance into certain academic programs or employment as it would create doubt with regard to plaintiff's mental and academic capabilities. Additionally, should it be perceived that plaintiff has ████████████, plaintiff would be precluded from entrance into certain military programs.[1] Any future school or employer can easily search the internet and obtain this false information if the record remains unredacted. This would cause plaintiff irreparable harm.

Third, should plaintiff return to medical school, he would have to disclose his previous matriculation in a medical school, and discuss the circumstances surrounding institutional action, but plaintiff would not have to include ███████████████████

███████████████████████

████████████████████████

██████████████████████████

██████████████████████████

████████████████████████████

██████████████████████████████

███████████████████ In endeavors outside of medical employment or medical

school, plaintiff would not be required to disclose his disenrollment or USMLE history.  Plaintiff

would suffer specific harm to his reputation based on the societal stigma associated with

disenrollment from an educational institution, should the record remain unredacted.  Court orders

and records are searchable over the internet and would cast doubt on plaintiff's competence

academically, mentally, and socially, in whatever field or endeavor plaintiff wishes to engage in

the future.

Plaintiff's name and the association of his name with unfounded details surrounding his

disenrollment ██████████████ is not "vital to claims made in litigation" and

therefore should not be revealed.  *Doe v. Bell Atl. Business Sys. Servs.*, 162 F.R.D. 418, 420 (D.

Mass. 1995) (cited by Defendant in its Opposition to Plaintiff's Motion for a Protective Order).

What *is* vital to claims made in litigation – the details surrounding plaintiff's substantive claims

and the disparate treatment of certain USUHS students – should remain unprotected and in the

public domain.  The redaction of plaintiff's name does not in any way inhibit or diminish the

right of public access to necessary information.

Fourth, plaintiff is no longer an active-duty officer in the military, nor is he employed as

a Medical Radiation Officer, and as such is transitioning back into life as a civilian.  In that

regard, the privacy interests of the plaintiff outweigh the public interest in access to the

plaintiff's *name*.  As plaintiff currently seeks employment, it would be detrimental to any

prospective employment should details of this case be associated with plaintiff's name.  Plaintiff

applied and was selected for a position as a civilian running a Navy medical program, but was

recently told that he no longer had the position, once this particular lawsuit was made public.  It

is now clear to plaintiff that proceedings in this matter coincided precisely with plaintiff's

6

deselection for the position. One can put forth other explanations for why this may have occurred, but it cannot be ruled out that the information made public in this suit was not the cause of plaintiff's deselection. Plaintiff reasonably fears that his employment prospects may be damaged should his name remain unredacted in Court filings.

Finally, with regard to other service members' names disclosed in the Complaint, plaintiff specifically requested of former counsel that those members' names be preserved in this litigation. For the reasons mentioned above, other service members' names alone are not vital to the claims made in this suit and need not be revealed.

Fairness should permit redaction of plaintiff's name, especially in light of false information and allegations contained in the record, unfortunately at the hand of counsel hired directly by plaintiff to advocate on plaintiff's behalf. The plaintiff's name alone is not vital to the claims made in this suit, and the public's right to accurate, not false, information is not impeded by the redaction of plaintiff's name from all filings.

Defendant, in a footnote in its Opposition to Plaintiff's Motion for Protective Order, conceded that in lieu of an order for redaction, they would be willing to accept a Court order that the parties make all future filings under seal. Plaintiff fails to see why Defendant would accept sealing all future filings, while leaving those documents filed through this point in the litigation unsealed. Plaintiff's request for redaction protects the public interest and right to access far more than Defendant's suggestion to seal future filings entirely.

Plaintiff gave much thought about entering into this litigation, and did so in order to remedy direct inequitable treatment suffered himself, as well as prevent other Navy USUHS students from inequitable treatment in the future, as compared to their Army and Air Force counterparts. Plaintiff should not have to suffer further adversity in the face of his attempts to

remedy such inequities as claimed in this matter. Plaintiff has had no disciplinary history whatsoever, graduated with honors in Mathematics, was twice accepted to medical school, and served the public for many years through numerous volunteer positions, humanitarian work, and honorable military service. Plaintiff should not have to bear the burden of seeking equality among military students by permitting all future employers, colleagues, friends, and family of the plaintiff to search the internet and obtain information that is either untrue or which may be disclosed at plaintiff's discretion. Plaintiff respectfully requests that his name be redacted from all filed documents in this matter.

For the foregoing reasons, plaintiff respectfully moves this Court to reconsider its order of March 12, 2013.

Respectfully submitted,

Dated: April 1, 2013

Jacob Oberstein
*Pro Se*
10101 Grosvenor Pl., Apt. 904
Rockville, MD 20852
Tel: (347) 526-4399
Email: Jacob.Oberstein@yahoo.com

8

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion for Reconsideration in the above-captioned matter was served on Defendant, United States, on April 1, 2013, via U.S. first-class mail to:

Daniel G. Kim
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

JACOB OBERSTEIN
*Plaintiff, Pro Se*
10101 Grosvenor Pl., Apt. 904
Rockville, MD 20852
Tel: (347) 526-4399
Email: Jacob.Oberstein@yahoo.com

9

Exhibit F

ORIGINAL

No. 12-840C
(Senior Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

JACOB OBERSTEIN,
Plaintiff,

APR – 5 2013

U.S. COURT OF
FEDERAL CLAIMS

v.

THE UNITED STATES,
Defendant.

## DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

OF COUNSEL:

Maj SEAN D. SCHROCK, USMC
LT MATTHEW ROUSH, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
U.S. Department of the Navy
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC 20374

DANIEL G. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

April 5, 2013

Attorneys for Defendant

## TABLE OF CONTENTS

Page

DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT ...................... 1

STATEMENT OF THE CASE ............................................................................................ 1

QUESTIONS PRESENTED ................................................................................................ 2

STATEMENT OF FACTS .................................................................................................. 3

    1.    Background .................................................................................................... 3

        A.    USUHS ............................................................................................ 3

        B.    Service Credit Upon Original Appointment As A Commissioned Officer In The Military Health Professions ................................ 4

        C.    Entry Grade And Rank Of Navy MSC Officers ......................................... 4

        D.    Promotions Of Navy Officers To Lieutenant (Junior Grade) .................... 6

        E.    Promotions Of Navy Officers To Lieutenant ............................................ 6

    2.    Mr. Oberstein's USUHS Tenure And Disenrollment ................................. 6

    3.    BCNR Proceedings ..................................................................................... 8

SUMMARY OF ARGUMENT .......................................................................................... 9

ARGUMENT .................................................................................................................... 10

    I.    THIS COURT SHOULD REQUIRE PLAINTIFF TO PROVIDE CLARITY REGARDING WHETHER THIS COURT POSSESSES JURISDICTION OVER HIS COMPLAINT ...................................................... 10

    II.    DEFENDANT IS ENTITLED TO JUDGMENT UPON THE ADMINISTRATIVE RECORD ........................................................................ 10

        A.    Standard Of Review ................................................................................. 10

        B.    The BCNR's Decision To Deny Plaintiff's Request For Retroactive Promotions Was Not Arbitrary, Capricious, Or Contrary To Law .......... 11

            1.    SECNAVINST 1412.6L Simply Does Not Apply To Plaintiff ... 12

2.    The BCNR Reasonably Concluded That Plaintiff Was Not Entitled To Service Credit For Time Served At USUHS ............ 13

3.    The BCNR Sufficiently Addressed Issues Raised By Plaintiff And Provided A "Concise Written Statement" Detailing Its Decision ...................................................................................... 15

4.    The BCNR's Conclusions Did Not Contravene 10 U.S.C. § 741 Or Otherwise Impermissibly Discriminate Against Plaintiff ..................................................................................... 16

5.    The BCNR "Substantially Concurred" With And Adopted The NPC's Recommendations .............................................. 19

III.    PLAINTIFF'S COMPLAINT MUST BE PARTIALLY DISMISSED, INSOFAR AS IT FAILS TO STATE A CLAIM ENTITLING PLAINTIFF TO RELIEF ........................................................................................ 20

A.    Standard Of Review ................................................................. 20

B.    Even If True, Plaintiff's Allegation That He Has A "Clear-Cut Legal Entitlement" To A Promotion Is Not Justiciable .................... 20

1.    Promotion Decisions Are Committed Wholly To The Navy's Discretion And Thus Are Not Subject To Judicial Review ......... 21

2.    To The Extent That Plaintiff Alleges That He Is Entitled To A Promotion, Plaintiff's Allegation Is Not Justiciable .................... 22

CONCLUSION ........................................................................................... 25

CERTIFICATE OF FILING AND SERVICE

APPENDIX

## TABLE OF AUTHORITIES

### CASES

Page(s)

*A&D Fire Prot., Inc. v. United States,*
   72 Fed. Cl. 126 (2006) ................................................................................................. 10

*Adkins v. United States,*
   68 F.3d 1317 (Fed. Cir. 1995) ................................................................................ 21, 22

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ................................................................................................ 20

*Baker v. Carr,*
   369 U.S. 186 (1962) ..................................................................................................... 21

*Bannum, Inc. v. United States,*
   404 F.3d 1346 (Fed. Cir. 2005) ............................................................................ 10, 11

*Barnick v. United States,*
   591 F.3d 1372 (Fed. Cir. 2010) .................................................................................. 11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................... 20

*Blaze Constr., Inc. v. United States,*
   27 Fed. Cl. 646 (1993) ................................................................................................ 20

*Boyer v. United States,*
   81 Fed. Cl. 188 (2008) ................................................................................................ 18

*Driscoll v. United States,*
   67 Fed. Cl. 22 (2005) .................................................................................................. 22

*Flowers v. United States,*
   80 Fed. Cl. 201 (2008) ................................................................................................ 11

*Gavin v. United States,*
   47 Fed. Cl. 486 (2000) ................................................................................................ 20

*Gould, Inc. v. United States,*
   935 F.2d 1271 (Fed. Cir. 1991) .................................................................................. 20

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ..................................................................................................... 20

iii

*House v. United States*,
    99 Fed. Cl. 342 (2011) ................................................................................. 15

*Lewis v. United States*,
    67 Fed. Cl. 158 (2005) ................................................................................. 22

*Metz v. United States*,
    466 F.3d 991 (Fed. Cir. 2006) ............................................................... 16 n.9

*Murphy v. United States*,
    993 F.2d 871 (Fed. Cir. 1993) ...................................................................... 21

*Rebosky v. United States*,
    60 Fed. Cl. 305 (2004) ................................................................................. 15

*Reynolds v. Army & Air Force Exch. Serv.*,
    846 F.2d 746 (Fed. Cir. 1988) ...................................................................... 10

*Richey v. United States*,
    322 F.3d 1317 (Fed. Cir. 2003) ............................................................. 11, 12

*Rose v. United States*,
    35 Fed. Cl. 510 (1996) ................................................................................. 11

*Saab Cars USA, Inc. v. United States*,
    434 F.3d 1359 (Fed. Cir. 2006) .................................................................... 11

*Sargisson v. United States*,
    913 F.2d 918 (Fed. Cir. 1990) ............................................................... 21, 23

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ..................................................................................... 20

*Smith v. Sec'y of Army*,
    384 F.3d 1288 (Fed. Cir. 2004) .................................................................... 22

*Tippett v. United States*,
    98 Fed. Cl. 171 (2011) ........................................................................... 21, 22

*Voge v. United States*,
    844 F.2d 776 (Fed. Cir.), *cert. denied*, 488 U.S. 941 (1988) ....................... 21

*West v. United States*,
    103 Fed. Cl. 55 (2012) ................................................................................. 21

*Wronke v. Marsh*,
    787 F.2d 1569 (Fed. Cir. 1986) .................................................................... 11

iv

## STATUTES

10 U.S.C. § 101 ................................................................................................................. 3

10 U.S.C. § 531 ................................................................................................................. 4

10 U.S.C. § 533 .............................................................................................................. 4, 5

10 U.S.C. § 619 ................................................................................................................. 6

10 U.S.C. § 620 ............................................................................................................ 3, 13

10 U.S.C. § 624 ........................................................................................................... 6, 23

10 U.S.C. § 641 ............................................................................................................ 3, 13

10 U.S.C. § 741 ........................................................................................ 4, 16, 16 n.9, 19

10 U.S.C. § 2114 ............................................................................... 3, 7 n.5, 14, 17

10 U.S.C. § 2126 ................................................................................... 3, 14, 17, 18

37 U.S.C § 201 ................................................................................................................. 7

37 U.S.C. § 204 .............................................................................................................. 10

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JACOB OBERSTEIN,          )
                                   )
       Plaintiff,          )
                                   )    No. 12-840C
       v.                 )    (Senior Judge Merow)
                                   )
THE UNITED STATES,     )
                                   )
       Defendant.      )

### DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court grant our motion for judgment upon the administrative record against plaintiff, Jacob Oberstein. Additionally, pursuant to RCFC 12(b)(6), we respectfully request that the Court dismiss a portion of plaintiff's complaint, filed December 6, 2012. In support of these motions, we rely upon plaintiff's complaint,[1] the administrative record, the attached appendix, and the following brief.

### STATEMENT OF THE CASE

According to his complaint, Mr. Oberstein is an active-duty lieutenant in the United States Navy (Navy) and currently serves as a Radiation Health Officer. (Compl. ¶¶ 5, 17-18.)

---

[1] For purposes of our RCFC 12 motion, we assume that the facts in plaintiff's complaint are true. However, if the Court were to deny this motion, we respectfully reserve the right to challenge any of the facts alleged by plaintiff.

Additionally, in an April 4, 2013 motion for reconsideration of this Court's March 12, 2013 Order denying the issuance of a protective order, Mr. Oberstein claims that his complaint contains "false information," namely that: (1) he is an active-duty officer; and (2) that he was "disenrolled ███████████████████████████████████ (Dkt. No. 14.) In that motion, Mr. Oberstein states that he separated from the Navy on December 31, 2012. (*Id.*) However, Mr. Oberstein has not amended his complaint, and as such, our brief responds to the complaint, as filed, and reflects the administrative record that was compiled in early 2013.

Previously, Mr. Oberstein was enrolled as a medical student at the Uniformed Services University of Health Sciences (USUHS), the nation's Federal health sciences university. (*Id.* ¶¶ 9-10.) While enrolled at USUHS, Mr. Oberstein was an active-duty ensign in the Navy. (*Id.*) Mr. Oberstein alleges that he was "disenrolled" from USUHS ████████████████████ ██████████████████████████████ (*Id.* ¶¶ 12-14.)

As a result, Mr. Oberstein alleges, he is entitled to retroactive changes in the effective dates of his subsequent promotions to lieutenant (junior grade) and lieutenant, respectively. (*Id.* ¶¶ 16-22.) However, the Board for Correction of Naval Records (BCNR) denied Mr. Oberstein's petition for retroactive promotions and his subsequent request for reconsideration. (*Id.*)

Mr. Oberstein seeks: (1) a retroactive promotion to lieutenant (junior grade), effective June 6, 2007; (2) a retroactive promotion to lieutenant, effective June 6, 2009; (3) other relief as appropriate "to accord full and complete relief"; and (4) attorney's fees and costs. (*Id.* at 20.) However, the administrative record in this case establishes that the BCNR's decision was supported by substantial evidence and not arbitrary, capricious, or contrary to law. As such, this Court should grant the Government's motion for judgment upon the administrative record on all counts. In the alternative, a portion of Mr. Oberstein's claims is not justiciable, and thus that portion fails to state a claim upon which relief can be granted. As such, this Court should dismiss that portion of his complaint.

## QUESTIONS PRESENTED

1.      Whether this Court should grant our motion for judgment upon the administrative record, because the administrative record demonstrates that the BCNR's decision denying Mr. Oberstein's request for retroactive promotions was not arbitrary or capricious, contrary to law, or unsupported by substantial evidence.

2

2.      Whether a portion of Mr. Oberstein's complaint should be dismissed for failure to state a claim upon which relief can be granted, because the decisions whether to promote Mr. Oberstein were left purely to the Navy's discretion and are thus nonjusticiable.

## STATEMENT OF FACTS

### 1.   Background

#### A.   USUHS

USUHS's School of Medicine is a fully-accredited medical school that integrates "military-unique content" into its curriculum.[2]  USUHS students are regularly commissioned officers and serve on active duty as second lieutenants or ensigns. 10 U.S.C. § 2114(b)(1). Despite serving on active duty, USUHS medical students are not on the active-duty list of their respective services. *Id.* §§ 101(b)(13), 620(a), 641(5).  Accordingly, they "are not subject to" those provisions governing the promotion of officers on the active-duty list. *Id.* § 641. Moreover, "service performed while [at USUHS] shall not be counted in:  (1) determining eligibility for retirement . . . or (2) computing years of service creditable [for purposes of computing basic pay]." *Id.* § 2126(a); *see also id.* § 2114(c) (applying service credit exclusions specified in section 2126 to USUHS medical students).

Generally, USUHS graduates "shall be required to serve on active duty . . . for not less than seven years, unless sooner released." *Id.* § 2114(c).  However, "[a] medical student who . . . is dropped from [USUHS] for deficiency in conduct or studies, or for other reasons, may be required to perform active duty in an appropriate military capacity in accordance with the active duty obligation imposed by this section." *Id.* § 2114(e).

---

[2]  *See* http://www.usuhs.mil/aboutus.html.

3

B.   **Service Credit Upon Original Appointment As A Commissioned Officer In The Military Health Professions**

"Original appointments . . . in the grades of ensign, lieutenant (junior grade), and lieutenant in the Regular Navy shall be made by the President alone." *Id.* § 531(a)(1); *see* Exec. Order No. 13,384, 70 FR 43739 (July 27, 2005) (delegating authority to Secretary of Defense). For purposes of determining grade and rank, an officer shall be credited upon appointment with any active commissioned service that he performed prior to his original appointment. 10 U.S.C. §§ 533(a)(1), 741(d)(1). Each service "may limit the amount of prior active commissioned service with which a person receiving an original appointment may be credited." *Id.* § 533(a)(2). Each service also may award constructive service to a new appointee for "advanced education or training or special experience" in a professional field. *Id.* § 533(b)(1). A person receiving credit for prior commissioned service may be denied constructive service. *Id.* § 533(a)(2). Moreover, one cannot receive constructive service "for education, training, or experience obtained while serving as a commissioned officer . . . on active duty." *Id.* § 533(d)(1). Accordingly, "the award of service credit to any person being appointed, assigned, or designated as a commissioned officer in an officer category shall be *equitably* determined to establish an *appropriate* appointment grade and date of rank [DOR] *relative* to other officers in the same competitive category." Department of Defense (DoD) Directive 1312.3 ¶ 4.1[3] (App. 2) (emphasis added).

C.   **Entry Grade And Rank Of Navy MSC Officers**

Navy officers with specific professional education or specialized skills may serve as members of one of eight active-duty staff corps, which includes the Medical Service Corps

---

[3] DoD Directive 1312.3 was later reissued as DoD Instruction 1312.03, with virtually the same relevant language. *Compare* DoD Directive 1312.3 (App. 1-8) *with* DoD Instruction 1312.03 (App. 9-15). (Citations to "App. _" refer to the appendix attached to this brief.)

(MSC). *See* Secretary of the Navy Instruction (SECNAVINST) 1400.1B, ¶ 3, encl. 1, at 2-3 (App.16, 20-21). A prospective Navy MSC officer's entry grade and rank within grade "shall be determined by the number of years of entry grade credit awarded on original appointment, designation, or assignment as an MSC officer." Office of the Chief of Naval Operations Instruction (OPNAVINST) 1120.8A ¶ 9 (App. 32). The officer shall receive entry grade credit equal to "the sum of constructive service credit and prior commissioned service credit." *Id.* The officer is entitled to one year of prior commissioned service credit for each year of such service while on active duty prior to his Navy MCS appointment. *Id.* Similarly, he is entitled to one-half year's prior commissioned service credit for each year of prior active-duty service, where that service is not in the corps or professional specialty being appointed (*e.g.*, a medical doctor with prior non-medical service). *Id.* However, the Navy expressly limits the entry grade credit available to a prospective Navy MSC officer, in that "a period of time shall be counted only once when computing entry grade credit." *Id.*; *see* 10 U.S.C. § 533(a)(2).

Prospective MSC officers receive *no* prior commissioned service credit for time spent in medical school. *Compare* OPNAVINST 1120.4B, at 11-12 (App. 50-51) (four years' credit for licensed Medical Doctor or Doctor of Osteopathy degree, plus credit for additional graduate medical education and specialties) *with* OPNAVINST 1120.8A, at 8 (App. 33) (no such credit). However, prospective MSC officers may receive constructive service credit for "successful completion" of degrees qualifying for MSC specialties or "successful completion" of post-baccalaureate professional education. *See* OPNAVINST 1120.8A, at 8 (App. 33). A prospective MSC officer who receives no entry grade credit "shall be appointed in the grade of ensign with the date of rank coinciding with the date of appointment." *Id.* ¶ 13.a (App. 36). Once appointed, MSC officers are placed on the active-duty list. *Id.* ¶ 13.c. (App. 37).

**D.**     **Promotions Of Navy Officers To Lieutenant (Junior Grade)**

"Officers to be promoted to the grade of . . . lieutenant (junior grade) shall be promoted in accordance with regulations prescribed by the Secretary concerned." 10 U.S.C. § 624(a)(2); *see generally* SECNAVINST 1412.6L (App. 61-70) (promulgating Navy regulations regarding promotion to lieutenant (junior grade)). Ensigns on the active-duty list are promoted to the grade of lieutenant (junior grade) "as soon as qualified, but not earlier than the date of completion of 24 months service in grade." SECNAVINST 1412.6L ¶¶ 5.a, 7 (App. 62-63).

**E.**     **Promotions Of Navy Officers To Lieutenant**

Lieutenants (junior grade) on the active-duty list on "an approved all-fully-qualified-officers list" are promoted to the grade of lieutenant. 10 U.S.C. § 624(a)(3); *see also* All Navy Administrative Message (ALNAV) 033/02 ¶¶ 1-2 (App. 75) (canceling lieutenant promotion selection boards and announcing that promotion to lieutenant will be based upon an approved all-fully-qualified list, *i.e.*, promotion list). To be eligible for promotion to lieutenant, a lieutenant (junior grade) must be on the active-duty list and have completed two years of service in grade. 10 U.S.C. § 619(a)(1)(B). All fully-qualified lieutenants (junior grade) are promoted to lieutenant "on the first day of the first month following the anniversary of 24 months in grade." ALNAV 033/02 ¶ 2 (App. 75). However, an officer's appointment may be delayed or even canceled if, among other things, "there is cause to believe that the officer . . . is mentally, physically, morally, or professionally unqualified." 10 U.S.C. § 624(d)(2).

**2.**     **Mr. Oberstein's USUHS Tenure And Disenrollment**

Mr. Oberstein accepted an offer of admission to USUHS on May 28, 2004. (Compl. ¶ 8);

6

AR 27, 81.[4]  In accepting USUHS's offer of admission, Mr. Oberstein acknowledged that, as a

student, he would "serve on active duty in the entry commission grade of O-1." AR 27; *see* 37

U.S.C. § 201(a).  A few weeks later, Mr. Oberstein completed Officer Indoctrination School.

(Compl. ¶ 6); AR 11, 73, 79.  Upon completing that program, Mr. Oberstein accepted an original

appointment as an ensign medical student in the Navy, with a date of rank of June 21, 2004.[5]  AR

73.  Mr. Oberstein began his USUHS studies on August 1, 2004.  (Compl. ¶ 10); AR 79.

By June 2006, Mr. Oberstein completed his first and second years of medical study at

USUHS.  (Compl. ¶ 12.) ████████████████████████████████████████

████████████████████████[6]  (*Id.*) ████████████████████████████

████████████████████ (*Id.* ¶ 13.)  As a result, Mr. Oberstein was

"disenrolled" from USUHS on June 5, 2007.  (*Id.* ¶ 14); AR 12-14, 37.

While awaiting reassignment by the Navy Personnel Command (NPC), Mr. Oberstein

was temporarily assigned to USUHS's Armed Forces Radiobiology Research Institute as a

"Special Projects Officer."  (Compl. ¶ 15); AR 31.  During that temporary assignment, Mr.

Oberstein maintained a student designation code.  *Id.*  Later, Mr. Oberstein was transferred to the

MSC.  AR 25.  Mr. Oberstein attended the Navy's Radiation Health Officer Course, which he

---

[4] Citations to "AR _" refer to the administrative record, which is being filed on the same day as this brief.  These records have been redacted, pursuant to RCFC 5.2(a).

[5] Mr. Oberstein received a reserve commission upon his enrollment, with the understanding that he would receive a regular commission upon graduating from USUHS.  AR 73, 81.  However, in 2005, Congress amended 10 U.S.C. § 2114 such that USUHS students would receive regular appointments upon enrollment, rather than upon graduation.  *See* Pub. L. No. 108-375, § 501(e), 118 Stat. 1874 (2004).  Accordingly, Mr. Oberstein became a regular ensign by operation of law in 2005, upon the effective date of this amendment.

[6] ████████████████████████████████████████████████████████████

completed in December 2009. (Compl. ¶¶ 17-18); AR 11, 79. On December 12, 2009, Mr.

Oberstein was assigned to his current duty as a Radiation Health Officer at the National Naval

Medical Center in Bethesda, Maryland. *Id.* During this period, Mr. Oberstein continued to serve

as an ensign, with a date of rank of June 6, 2009. (Compl. ¶ 18); *see also* AR 74 (reflecting Mr.

Oberstein's December 22, 2009 redesignation from student ensign to MSC officer).

On April 20, 2011, the Secretary of the Navy approved Mr. Oberstein's promotion to

lieutenant, his current grade. ALNAV 028/11 ¶ 4 (App. 76-77). Mr. Oberstein accepted the

appointment on July 11, 2011, with a date of rank and effective date of July 1, 2011. AR 80.

### 3.    BCNR Proceedings

On August 23, 2010, Mr. Oberstein petitioned the BCNR, requesting two retroactive

promotions from his current ensign grade: (1) to lieutenant (junior grade), with date of rank and

effective date of June 6, 2007; and (2) to lieutenant, with date of rank and effective date of June

6, 2009. (Compl. ¶ 19); AR 21-25. In a September 27, 2010 advisory opinion to the BCNR, the

NPC concluded that Mr. Oberstein's correct ensign date of rank was June 6, 2007, and that his

correct lieutenant (junior grade) date of rank was June 6, 2009. (Compl. ¶ 20); AR 35. The NPC

thus recommended that these dates of rank be "incorporated into [Mr. Oberstein's] official

military record" and that Mr. Oberstein be entitled to "applicable compensation." *Id.*

The BCNR denied Mr. Oberstein's application in an October 21, 2010 written decision.

AR 16-18. The BCNR reviewed Mr. Oberstein's petition, along with relevant statutes,

regulations, and procedures, as well as the NPC's September 27, 2010 advisory opinion. AR 16,

35. In its decision, the BCNR advised Mr. Oberstein to request that "NPC take whatever steps

are needed to ensure that your record reflects your promotion to lieutenant (junior grade) with a

date of rank and effective date of 6 June 2009," consistent with the NPC's recommendation. AR

8

16-18, 35. Indeed, the BCNR "substantially concurred with the comments contained in the advisory opinion." AR 16. However, the BCNR otherwise denied Mr. Oberstein's request to further change his date of rank for lieutenant (junior grade) or receive a retroactive promotion to lieutenant. AR 16-17. The BCNR concluded that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." AR 16. The BCNR added that it found "no error or injustice in [Mr. Oberstein] not having been credited, for purposes of seniority and promotion, with the time [he] served at [USUHS]." AR 16-17. Accordingly, the BCNR "was unable to find it inequitable that [Mr. Oberstein] was denied [entry grade credit] for [his] service in a program [he] did not complete, in which [he] received education and pay." AR 17.

On April 27, 2011, the BCNR denied Mr. Oberstein's request for reconsideration. (Compl. ¶ 22); AR 2-3. In denying the reconsideration request, the BCNR noted that it could not "find any new and material evidence or other matter not previously considered." AR 2.

## SUMMARY OF ARGUMENT

Mr. Oberstein challenges the Navy's denial of his request for retroactive promotions to lieutenant (junior grade) and lieutenant, respectively, as well as the BCNR's upholding of that denial. He alleges that: (1) the BCNR's "interpretations exceed the bounds of the permissible"; (2) the BCNR's "conclusions discriminate against USUHS students and are therefore arbitrary and capricious"; and (3) the language of SECNAVINST 1412.6L is "arbitrary or capricious in substance." (*See generally* Compl.)

*First*, the administrative record in this case establishes that the BCNR's decision was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Second*, the Navy's promotion decisions regarding Mr. Oberstein are not justiciable, as they are properly committed to the Navy's discretion.

9

## ARGUMENT

**I.    THIS COURT SHOULD REQUIRE PLAINTIFF TO PROVIDE CLARITY REGARDING WHETHER THIS COURT POSSESSES JURISDICTION OVER HIS COMPLAINT**

As an initial matter, the dispute in this matter arises with regard to the pay grades to which Mr. Oberstein contends he is entitled. Mr. Oberstein alleges jurisdiction pursuant to several statutes, including the Military Pay Act, 37 U.S.C. § 204, which entitles members of the military to their basic pay. The complaint states that Mr. Oberstein "is not asking the [C]ourt to credit his time at USUHS for retirement purposes or for the computation of basic pay, [but rather] merely requests to be promoted to a rank that reflects the many years he has dedicated to the service." (*Id.* ¶ 38.) We interpret this to mean that Mr. Oberstein seeks back pay attendant to his requested retroactive promotions. Nonetheless, the Court must first assess whether jurisdiction is proper in this case. Mr. Oberstein bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Accordingly, we request that the Court require Mr. Oberstein to clarify his request for relief. Should the Court determine that Mr. Oberstein fails to state a claim for money damages, it should dismiss his complaint.

**II.   DEFENDANT IS ENTITLED TO JUDGMENT UPON THE ADMINISTRATIVE RECORD**

### A.    Standard Of Review

A motion for judgment upon the administrative record, pursuant to RCFC 52.1, is distinguishable from a motion for summary judgment. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1355 (Fed. Cir. 2005). In reviewing a RCFC 52.1 motion, the Court "asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum,*

404 F.3d at 1356). In other words, the Court asks "whether the plaintiff has shown that the decision was not in accordance with the law." *Flowers v. United States*, 80 Fed. Cl. 201, 212 (2006). The existence of a question of fact neither precludes the granting of a motion for judgment nor requires this Court to conduct an evidentiary proceeding. *See also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1372 (Fed. Cir. 2006). Instead, such fact questions must be resolved by reference to the administrative record, "as if [this Court] were conducting a trial on [that] record." *Bannum*, 404 F.3d at 1357.

This Court reviews a decision of a board for correction of military records under a deferential standard, so as not to "disturb the decision of the [corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citation omitted). Plaintiff bears the burden to show by "cogent and clearly convincing evidence" that the corrections board's decision fails this standard. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986). Plaintiff's burden is "heavy." *Rose v. United States*, 35 Fed. Cl. 510, 512 (1996) (citations omitted). Plaintiff also must overcome the presumption of regularity that attaches to the actions of a corrections board. *Richey v. United States*, 322 F.3d 1317, 1326 (Fed. Cir. 2003).

**B.    The BCNR's Decision To Deny Plaintiff's Request For Retroactive Promotions Was Not Arbitrary, Capricious, Or Contrary To Law**

Though Mr. Oberstein nominally identifies three counts in his complaint, several arguments overlap within those counts. Essentially, we can categorize Mr. Oberstein's complaint into five distinct claims:[7] (1) the Navy failed to properly apply one of its regulations,

---

[7] In addition to these claims, Mr. Oberstein also contends having a "clear-cut legal entitlement" to his requested promotions. (*See* Compl. ¶ 3.) As this claim implicates the question of justiciability, we address it separately pursuant to our RCFC 12(b)(6) motion.

SECNAVINST 1412.6L, and that such failure "delayed" Mr. Oberstein's promotion, (*id.* ¶¶ 25-30); (2) the BCNR erred by denying Mr. Oberstein service credit for his USUHS tenure, (Compl. ¶ 45); (3) the BCNR "failed to address all issues presented" and failed to provide a "concise written statement," (*id.* ¶¶ 2, 49); (4) the BCNR's decision "discriminated against USUHS students" and "created disparate treatment among members of different branches," (*id.* ¶¶ 42-52); and (5) the BCNR's decision did not explain why it deviated from the NPC's recommendations, (*id.* ¶¶ 20, 47).

However, the administrative record in this case substantially supports the BCNR's decision and establishes that the decision was not arbitrary, capricious, or contrary to law. Coupled with the presumption of regularity associated with BCNR decisions, *see Richey*, 322 F.3d at 1326, each of Mr. Oberstein's distinct claims fail.

1.   **SECNAVINST 1412.6L Simply Does Not Apply To Plaintiff**

According to Mr. Oberstein, the Navy failed to properly apply SECNAVINST 1412.6L to him, and that such failure "delayed" his promotion. (Compl. ¶¶ 25-30.) Specifically, Mr. Oberstein cites the Navy's policy to promote an ensign to lieutenant (junior grade) "as soon as qualified, but not earlier than the date of completion of 24 months service in grade. . . . Failure to completely qualify in a professional specialty field . . . should not alone be considered grounds for delay of promotion." (*Id.*); *see* SECNAVINST 1412.6L ¶¶ 5.a, 7 (App. 62-63). Mr. Oberstein contends that the SECNAVINST 1412.6L "states that it applies to all ensigns," including him. (Compl. ¶ 26.) However, the BCNR correctly concluded that SECNAVINST 1412.6L simply does not apply to him, *see* AR 17, and the applicable statutes and regulations support that conclusion.

As an initial matter, Mr. Oberstein's characterization of a "delayed" promotion is a

12

misnomer. As the NPC recommended, and the BCNR adopted, Mr. Oberstein's disenrollment

necessitated a reset date of rank for ensign of June 6, 2007, coinciding with his new, non-student

duties. AR 16, 35. Based upon that reset date of rank, the BCNR also adopted the NPC's

recommendation to adjust Mr. Oberstein's date of rank for lieutenant (junior grade) to June 6,

2009 – *i.e.*, after exactly 24 months of service while on the active-duty list, with no "delay."

In any event, contrary to Mr. Oberstein's contention, SECNAVINST 1412.6L does not

apply to *all* ensigns, but rather, only to "all ensigns on the active-duty list." SECNAVINST

1412.6L ¶ 3.a (App. 61). USUHS students are expressly excluded from the active-duty list. 10

U.S.C. §§ 620(a), 641(5). Thus, the plain language of the regulation and related statutes clearly

supports that the regulation did not apply to Mr. Oberstein while he was enrolled at USUHS.

Hoping to circumvent the conclusion, Mr. Oberstein notes that SECNAVINST 1421.4D, which

had "specifically stated its application to USUHS students," was cancelled and replaced by

SECNAVINST 1412.6L. (*See* Compl. ¶ 26.) According to Mr. Oberstein, "SECNAVINST

1412.6L merely replaces the previous [regulation] and retains identical applicability [to USUHS

students]." (*Id.* ¶ 30.) However, that is not the case. Whereas the predecessor regulation

expressly applied to USUHS students, SECNAVINST 1412.6L removed any reference to

USUHS. *Compare* SECNAVINST 1421.4D ¶ 3 (App.71) *with* SECNAVINST 1412.6L ¶ 3.a

(App. 61). Thus, given this statutory and regulatory landscape, it would be unreasonable to

conclude that SECNAVINST 1412.6L applies to Mr. Oberstein or other USUHS students.

### 2.  The BCNR Reasonably Concluded That Plaintiff Was Not Entitled To Service Credit For Time Served At USUHS

The BCNR properly determined that Mr. Oberstein was not entitled to entry grade credit

for his USUHS medical schooling, because it is undisputed that he did not graduate from

USUHS. AR 37; *see* OPNAVINST 1120.8A, at 8 (App. 33) (requiring receipt of doctoral degree

13

to receive entry grade credit for schooling); 10 U.S.C. § 2126(b)(1)(A) (authorizing service in pursuit of a course of study, but only "if the member completes the course of study"). Citing 10 U.S.C. § 2114(b)(1) and SECNAVINST 1412.6L, Mr. Oberstein contends that, as a USUHS officer, he was on active duty as an ensign for more than 24 months while serving as a student, and that accordingly, he should have received 24 months of service credit for promotion purposes. (Compl. ¶¶ 27-29.)

Mr. Oberstein's argument is predicated upon the applicability of SECNAVINST 1412.6L.[8]  However, as discussed above, the BCNR concluded that that regulation plainly did not apply to Mr. Oberstein. SECNAVINST 1412.6L applied only to "ensigns on the active-duty list," and Mr. Oberstein (before his disenrollment, at least) was expressly not on the active-duty list. As a result, the earliest that Mr. Oberstein could have been placed on the active-duty list was after he was disenrolled (*i.e.*, June 6, 2007, or later), and thus the earliest that he could have been promoted to lieutenant (junior grade) was two years later (*i.e.*, June 6, 2009). The NPC stated as much in its advisory opinion, in recommending adjustments to Mr. Oberstein's dates of rank for ensign (June 6, 2007) and lieutenant (junior grade) (June 6, 2009), respectively. AR 35. The NPC concluded that because Mr. Oberstein ██████████████████ his time in rank is reset to his date of disenrollment and any past participation is dissolved." *Id.* Because the NPC's recommendation (which the BCNR adopted) comports with the relevant statutes and regulations, the BCNR's decision to deny service credit for USUHS time was reasonable.

---

[8] In what appears to be a typographical error, both Mr. Oberstein and the BCNR sometimes reference the relevant regulation as SECNAVINST 14<u>21</u>.6L, instead of SECNAVINST 14<u>12</u>.6L.

### 3.    The BCNR Sufficiently Addressed Issues Raised By Plaintiff And Provided A "Concise Written Statement" Detailing Its Decision

Mr. Oberstein complains that the BCNR "failed to address all issues presented" and failed to provide a "concise written statement." (*See* Compl. ¶¶ 2, 49.) Both arguments fail.

*First*, a corrections board's supposed failure to specifically address every allegation raised by a plaintiff does not render the board's decision inadequate, where the board details the bases for its decision. *Rebosky v. United States*, 60 Fed. Cl. 305, 311-12 (2004); *see also House v. United States*, 99 Fed. Cl. 342, 348 n.8 (2011) (upholding decision, notwithstanding its "less than ideal clarity," where "the agency's path may reasonably be discerned"). In any event, the relevant standard for this Court is not whether the BCNR "addressed all issues presented," but rather, whether the BCNR's decision is supported by substantial evidence and not arbitrary, capricious, or contrary to law.

*Second*, contrary to Mr. Oberstein's allegation, the BCNR presented a written decision letter that detailed the rationale for its decision. *See* AR 16-18; *see also* AR 2-3 (BCNR reconsideration decision), 35 (NPC advisory opinion upon which BCNR relied in part). Mr. Oberstein complains that the BCNR "should not be permitted to use blanket language in every case it denies as a legal shield against relief and judicial scrutiny of courts." (Compl. ¶ 49.) However, the BCNR's October 21, 2010 decision explicitly discusses its handling of purported case law precedent, as well as DoD and Navy regulations pertinent to Mr. Oberstein's application. AR 16-18. Similarly, the BCNR's April 27, 2011 reconsideration decision detailed the reasons for factually distinguishing a purportedly new case from the facts involving Mr. Oberstein. AR 2-3. Both examples are quite a far cry from "blanket language" that can be used "in every case." Whether viewed apart or together, these documents provide the Court with a detailed understanding of the BCNR's rationale in denying Mr. Oberstein's request.

### 4.    The BCNR's Conclusions Did Not Contravene 10 U.S.C. § 741 Or Otherwise Impermissibly Discriminate Against Plaintiff

Mr. Oberstein contends that the BCNR's conclusions "are inconsistent with 10 U.S.C. § 741,"[9] which provides that "[r]ank among officers . . . of the same grade or of equivalent grades who have the same date of rank is determined by regulations prescribed by the Secretary of Defense *which shall apply uniformly* among the [services]." (Compl. ¶ 32) (citing 10 U.S.C. § 741) (emphasis in complaint).  Mr. Oberstein adds that the purpose of section 741 is "to prohibit disparate and unfair treatment among the branches of the military." (*Id.*)

However, Mr. Oberstein's contention fails. DoD regulations provide that any award of entry grade credit be "*equitably determined* to establish an appropriate appointment grade and date of rank relative to other officers in the same competitive category," DoD Directive 1312.3 ¶ 4.1 (App. 2) (emphasis added).  Similarly, the awarding of prior commissioned service credit to prospective health professions officers should be "applied in an *equitable and consistent manner.*" DoD Instruction 6000.13 ¶ 6.1.1 (App. 80-81) (emphasis added).  Based upon the mandate in these regulations, the BCNR applied established Navy policy to permit the award of four years' prior commissioned service credit to licensed USUHS graduates, but deny any credit to those who fail to graduate. *Compare* OPNAVINST 1120.4B, at 11-12 (App. 50-51) *with* OPNAVINST 1120.8A, at 8 (App. 33).  Accordingly, the BCNR reasonably concluded that its treatment of USUHS service credit may vary by case and individual, depending upon the particular facts involved and the Navy's discretion in equitably determining service credit.

---

[9]  In his request for consideration before the BCNR, Mr. Oberstein alleged that the BCNR's decision "creates disparate treatment." AR 8.  However, he failed to allege a violation of section 741 before the BCNR.  Consequently, he waived this argument before this Court. *See Metz v. United States*, 466 F.3d 991, 999-1000 (Fed. Cir. 2006).  In any event, as discussed above, even if Mr. Oberstein did not waive this issue, his contention fails.

Mr. Oberstein takes issue with how the BCNR has applied DoD Directive 1312.3. (Compl. ¶ 46.) He contends – albeit with no support – that the BCNR's interpretation is that "equitable cause must relate to some kind of undesirable conduct," and that Mr. Oberstein has been harmed despite being "a good sailor" and "performing as required." (*Id.*) Though DoD Directive 1312.3 does not expressly define what it means for the Navy to "equitably determine" whether to grant service credit, the directive certainly is not limited to scenarios with negative connotation. For example, the military may grant constructive service credit when an officer earns an advanced degree "while on active duty in less than the number of years normally required to complete [it]." DoD Directive 1312.3 ¶ 4.2.2 (App. 3-5). Similarly, the military may waive the maximum entry grade credit "in individual cases if there are significant reasons to appoint a person in a *higher* grade." *Id.* ¶ 4.2.3 (App. 5). In either case, the directive enables the military to grant *more* credit than what the officer may otherwise receive. To wit, Mr. Oberstein's attempt to equate "equitable" with "undesirable" or the like is wholly unsupported.

To support his contention, Mr. Oberstein cites two corrections board cases that, he contends, "directly contradict" the BCNR's decision here. (Compl. ¶¶ 31-35.)

*First*, the BCNR distinguished an Air Force board decision, citing that decision's reliance upon SECNAVINST 1412.4D, which, as the BCNR noted, was cancelled by SECNAVINST 1412.6L. AR 17, 45. As discussed above, whereas the former expressly applied to USUHS officers, the latter expressly did not. Mr. Oberstein also highlights the Air Force decision's citing of a "key phrase" in 10 U.S.C. § 2114, that "notwithstanding any other provision of law, [USUHS] students serve on active duty." (Compl. ¶ 36); AR 43. He omits, however, that section 2114 has since been amended and *no longer contains that language. See* 10 U.S.C. § 2114. Also, the Air Force decision relies heavily upon 10 U.S.C. § 2126, in that section 2126

17

does not "preclude use of the USUHS time" for rank and promotion purposes.  AR 43.

Similarly, however, section 2126 does not *require* such treatment, either.

 *Second*, the BCNR also distinguished one of its own earlier decisions, concluding that it

"was not similar" to Mr. Oberstein's.  AR 2.  Specifically, the BCNR noted that that applicant's

officer status "did not change when he entered [school] or when he failed that school," so that he

could be promoted in due course per his original date of rank.  *Id.*  In contrast, because Mr.

Oberstein had student status, that necessarily needed to be terminated upon his disenrollment,

thus requiring a new appointment and new date of rank.  *Id.*; *see, e.g.*, OPNAVINST 1120.8A

¶ 13.b (App. 36).  Accordingly, the BCNR reasonable chose not to rely strictly upon the

decisions in those prior board decisions.

 Notably, the BCNR's decision to deny service credit for USUHS schooling is *consistent*

with this Court's decision in *Boyer v. United States*, 81 Fed. Cl. 188 (2008).  In *Boyer*, the

plaintiff, a USUHS medical school graduate, applied for correction of his military records to

reflect constructive service credit for his four years spent at USUHS.  *Id.* at 189.  The Court

upheld the BCNR's decision to deny credit for that period, as the plaintiff had entered USUHS

after the effective date of the Defense Officer Personnel Management Act, which expressly

precluded granting such credit for medical school.  *Id.* at 207.  As noted in its decision, the

BCNR's decision is also consistent with a prior Army board decision that denied service credit

for time spent in the USUHS program.  AR 17.  Given Mr. Oberstein's logic that any conclusion

appearing to contradict a prior case is necessarily improper, then taking that logic one step

further, the BCNR would have acted unreasonably *regardless* of how it decided this issue –

because either way, a contradictory decision exists.  In fact, the BCNR chose not to rely upon

any of these decisions – but not due to how they treated the issue of USUHS service credit.

Rather, the BCNR relied upon the inapplicability of SECNAVINST 1412.6L to Mr. Oberstein. The BCNR also recognized that its handling of USUHS service credit may vary by case, in light of DoD's directive that service credit be "equitably determined." AR 17. Accordingly, the BCNR has not discriminated against Mr. Oberstein or otherwise contravened section 741.

### 5.   The BCNR "Substantially Concurred" With And Adopted The NPC's Recommendations

Mr. Oberstein inaccurately alleges that the BCNR rendered its decision "[d]espite [the NPC's] advisory opinion." (Compl. ¶¶ 20, 47). He complains that the BCNR "failed to provide any logical reasoning behind its denial of the advisory opinion. (*Id.* ¶ 47.) Mr. Oberstein is simply wrong. In its advisory opinion, the NPC "recommended a change of DOR for Ensign to 6 June 2007, and DOR of Lieutenant Junior Grade to 6 June 2009." AR 35. The BCNR "substantially concurred with the comments contained in the advisory opinion." AR 16. The BCNR also noted that Mr. Oberstein "may request that NPC take whatever steps are needed to ensure that your record reflects your promotion to lieutenant junior grade with a date of rank and effective date of 6 June 2009." AR 17. In other words, the BCNR adopted the NPC's recommendation to amend Mr. Oberstein's date of rank for his promotion to lieutenant (junior grade). Nevertheless, the BCNR "denied" Mr. Oberstein's application because Mr. Oberstein requested an even earlier date of rank (*i.e.*, by two years) for his promotion to lieutenant (junior grade). AR 16-17. Contrary to Mr. Oberstein's contention, the BCNR simply did not "disagree[ ] with the advisory opinion." (See Compl. ¶ 47.)

Therefore, this Court should grant the Government's motion for judgment upon the administrative record as to the entirety of Mr. Oberstein's complaint.

### III.   PLAINTIFF'S COMPLAINT MUST BE PARTIALLY DISMISSED, INSOFAR AS IT FAILS TO STATE A CLAIM ENTITLING PLAINTIFF TO RELIEF

#### A.   Standard Of Review

RCFC 12(b)(6) "authorizes dismissal of a complaint if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law." *Gavin v. United States*, 47 Fed. Cl. 486, 489 (2000). In considering an RCFC 12(b)(6) motion, the Court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982). However, "[l]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Blaze Constr., Inc. v. United States*, 27 Fed. Cl. 646, 650-51 (1993).

To survive an RCFC 12(b)(6) motion, a complaint must demonstrate sufficient "facial plausibility [that] allows the [C]ourt to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plaintiff's factual allegations must "raise a right to relief above the speculative level" and "nudge[ ] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Once a claim for relief has been adequately stated, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citations omitted).

#### B.   Even If True, Plaintiff's Allegation That He Has A "Clear-Cut Legal Entitlement" To A Promotion Is Not Justiciable

Mr. Oberstein's complaint must be dismissed, because his claims for judicially-ordered retroactive promotions are not justiciable and thus not susceptible to judicial review.

Even if this Court possesses jurisdiction to entertain Mr. Oberstein's claims, it also must

20

determine whether those claims are justiciable. *West v. United States*, 103 Fed. Cl. 55, 60

(2012). Justiciability depends on "whether the duty asserted can be judicially identified and its

breach judicially determined, and whether protection for the right asserted can be judicially

molded." *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr*,

369 U.S. 186, 198 (1962)). If this Court concludes that a claim is not justiciable, then the

appropriate result is to dismiss that claim pursuant to RCFC 12(b)(6). *Id.*

1.   **Promotion Decisions Are Committed Wholly To The Navy's Discretion And Thus Are Not Subject To Judicial Review**

It is well-settled that this Court lacks authority to order promotions of military officers.

*Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir.), *cert. denied*, 488 U.S. 941 (1988). Indeed,

"there are thousands of routine personnel decisions regularly made by the services which are

variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle

with." *Murphy*, 993 F.2d at 873 (citation omitted). The selection of officers for promotion is "a

type of substantive decision by the military that is frequently described as nonjusticiable."

*Tippett v. United States*, 98 Fed. Cl. 171, 182 (2011). With that in mind, courts have

"emphasized that judicial review is only appropriate where the Secretary's discretion is limited,

and Congress has established 'tests and standards' against which the [C]ourt can measure his

conduct." *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990). One may challenge

"the particular *procedure* followed in rendering a military decision," but "the *merits* of a decision

committed wholly to the discretion of the military are not subject to judicial review." *Adkins v.

United States*, 68 F.3d 1317, 1323 (Fed. Cir. 1995) (emphasis in original).

Here, Mr. Oberstein alleges having a "clear-cut legal entitlement" to his requested

promotions. (Compl. ¶ 3.) A "clear-cut legal entitlement" to a promotion requires that

"everything necessary for the appointment has been done except the making of the appointment

21

itself." *Driscoll v. United States*, 67 Fed. Cl. 22, 26 (2005). In other words, a plaintiff must

establish that "he has satisfied all the legal requirements for promotion, but the military has

refused to recognize his status." *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004).

Insofar as this allegation relates to the *merits* of the Navy's promotion decisions – and,

specifically, Mr. Oberstein's disagreement with the Navy and BCNR – those decisions are not

subject to judicial review. *See Adkins*, 68 F.3d at 1323.

### 2.   To The Extent That Plaintiff Alleges That He Is Entitled To A Promotion, Plaintiff's Allegation Is Not Justiciable

To support his contention that he has a "clear-cut legal entitlement" to a retroactive

promotion, Mr. Oberstein alleges that the Navy's policy is to promote ensigns, like him, to

lieutenant (junior grade) "as soon as qualified, but not earlier than the date of completion of 24

months service in grade." (Compl. ¶ 29 (citing SECNAV1412.6L ¶ 5.a (App. 62)).) Because his

date of rank for ensign was June 21, 2004, *see* AR 2,[10] Mr. Oberstein argues that he should have

been promoted to lieutenant (junior grade) immediately upon his disenrollment, with a date of

rank of June 6, 2007. (Compl. ¶ 30.) However, "[a] military officer cannot claim an 'automatic

promotion.'" *Lewis v. United States*, 67 Fed. Cl. 158, 162 (2005). Indeed, Mr. Oberstein fails to

demonstrate how the Navy's alleged error compels, as a matter of law, the retroactive

promotions. *See Tippett*, 98 Fed. Cl. at 182.

Indeed, even had Mr. Oberstein received service credit for his USUHS time, the Navy

*still* has great discretion to determine whether (and when) to promote him. Under this

hypothetical, SECNAVINST 1412.6L would apply to Mr. Oberstein. That regulation provides

---

[10] Though we cite here to the administrative record within our RCFC 12(b)(6) motion, the NPC's advisory opinion and the BCNR's original and reconsideration decisions were also attached to the complaint. (*See* Compl., Exs. 1-1 & 1-2.)

that officers approved for appointment to lieutenant (junior grade) or lieutenant are still "subject to each appointee's qualifications for promotions," which include physical, mental, moral, and professional criteria. SECNAVINST 1412.6L ¶ 7 (App. 63). Though the physical qualifications are expressly governed, each of the other qualifications are subject to the unfettered discretion of a commanding officer, who "shall determine whether the officer is . . . qualified." *Id.* A promotion also may be delayed if "there is cause to believe that the officer . . . is mentally, physically, morally, or professionally unqualified." 10 U.S.C. § 624(d)(2). With each of these criteria comes one more layer of discretion regarding the promotion decision.

Similarly, if a promotion is delayed, but later that delay is deemed unwarranted, the Navy "*may* adjust" the officer's pay and date of rank "as the Secretary considers appropriate under the circumstances" – but is not *required* to do so. *Id.* (emphasis added). In other words, even in the event of a delayed promotion, the Navy retains complete discretion to decide when promotions occur, based on the need for additional officers at that grade, and according to the order of merit that it determines. In any event, Mr. Oberstein simply cannot point to any authority that restricts the Navy's discretion regarding its promotion decisions. Indeed, he cannot point to any "established tests and standards against which the [C]ourt can measure his conduct." *See Sargisson*, 913 F.2d at 922.

Mr. Oberstein contends that "there is no discretion in [his] promotion, [and] the discretion, if any, lies in a denial of the promotion." (Compl. ¶ 54.) This is a distinction without a difference. In any event, the relevant statutes and regulations plainly establish that the military possesses great discretion in deciding to promote – or not to promote. Indeed, promotions in the Navy are not automatic. Rather, the Navy requires that an officer be "qualified" (for lieutenant (junior grade)) or "fully qualified" (for lieutenant). SECNAVINST 1412.6L ¶ 5.a (App. 62);

23

ALNAV 033/02 ¶¶ 1-2 (App. 75).  Such a determination is necessarily discretionary.  Mr.

Oberstein also ignores that the Navy has virtually unfettered discretion whether to grant service

credit for time spent at USUHS, so long as it has "equitably determined" the result.  *See* DoD

Directive 1312.3 ¶ 4.1 (App. 2).  Beyond that, neither Mr. Oberstein nor this Court may decide

who is qualified to receive a promotion and who is not; such a decision is best left to the military.

Mr. Oberstein's contentions merely reflect his subjective belief that he should have been

promoted sooner, but they have *no* bearing on whether the Navy properly acted within its

discretion.  Therefore, Mr. Oberstein's claim of a "clear-cut legal entitlement" is not justiciable

and must be dismissed pursuant to RCFC 12(b)(6).

24

## CONCLUSION

For the reasons set forth above, defendant respectfully requests that this Court grant our motion to dismiss plaintiff's complaint or, in the alternative, our motion for judgment upon the administrative record.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

DANIEL G. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-9322
Fax: (202) 307-0972
Danny.Kim@usdoj.gov

OF COUNSEL:

Maj SEAN D. SCHROCK, USMC
LT MATTHEW ROUSH, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
U.S. Department of the Navy
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC 20374

April 5, 2013

Attorneys for Defendant

**APPENDIX**

# TABLE OF CONTENTS

Page(s)

Department of Defense (DoD) Directive 1312.3
(Oct. 21, 1996) ................................................................................ App. 1-8

Department of Defense (DoD) Instruction 1312.03
(Oct. 6, 2006) ................................................................................ App. 9-15

Secretary of the Navy Instruction (SECNAVINST) 1400.1B
(Jan. 28, 2006) ............................................................................... App. 16-25

Office of the Chief of Naval Operations Instruction (OPNAVINST) 1120.8A
(Oct. 3, 2011) ................................................................................ App. 26-39

Office of the Chief of Naval Operations Instruction (OPNAVINST) 1120.4B
(July 7, 2011) ................................................................................ App. 40-60

Secretary of the Navy Instruction (SECNAVINST) 1412.6L
(Dec. 9, 2005) ................................................................................ App. 61-70

Secretary of the Navy Instruction (SECNAVINST) 1421.4D
(Sept. 21, 1988) ............................................................................. App. 71-74

All Navy Administrative Message (ALNAV) 033/02
(Apr. 22, 2002) .............................................................................. App. 75

All Navy Administrative Message (ALNAV) 028/11
(Apr. 20, 2011) .............................................................................. App. 76-77

Department of Defense (DoD) Instruction 6000.13
(June 30, 1997) .............................................................................. App. 78-99

# Exhibit G

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED

APR 2 2 2013

U.S. COURT OF
FEDERAL CLAIMS

JACOB OBERSTEIN,                )
                                )
        Plaintiff,              )
                                )
v.                              )       No. 12-840C
                                )       (Senior Judge Merow)
THE UNITED STATES,              )
                                )
        Defendant.              )

## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR RECONSIDERATION

Pursuant to Rule 59(f) of the Rules of the Court of Federal Claims (RCFC), as well as

this Court's Order dated April 3, 2013, defendant, the United States, respectfully opposes the

motion filed by plaintiff, Jacob Oberstein, for reconsideration of this Court's March 12, 2013

Order denying plaintiff's motion for a protective order in this matter. For the reasons set forth

below, this Court should deny plaintiff's motion for reconsideration.

## BACKGROUND

Until December 31, 2012, Mr. Oberstein was an active-duty lieutenant in the United

States Navy (Navy) serving as a Radiation Health Officer. (Compl. ¶¶ 5, 17-18); Plaintiff's

Motion For Reconsideration (Mot.) at 3. In his complaint, Mr. Oberstein alleges that he was

"disenrolled" as a medical student from the Uniformed Services University of Health Sciences

(USUHS) ████████████████████████████████████████████████

████████████████████████████████ (Compl. ¶¶ 12-14.) During his USUHS

enrollment, Mr. Oberstein was a regular active-duty ensign in the Navy. (Id. ¶¶ 9-10.)

On December 5, 2012, Mr. Oberstein filed his complaint in this Court. Almost one

month later, on January 3, 2013, Mr. Oberstein filed a motion for a protective order, seeking an

order that his name be redacted from all public documents related to this case. (Dkt. No. 4.)[1]

Mr. Oberstein did not file a reply brief after the Government filed its opposition brief. This

Court denied Mr. Oberstein's motion in an Order dated March 12, 2013. (Dkt. No. 10.)

On April 3, 2013, this Court granted a motion to withdraw filed by plaintiff's counsel,

Eric Montalvo. (Dkt. No. 12.) The Court directed the Clerk of Court to file Mr. Oberstein's

Notice Of Appearance to appear *pro se*, as well as the instant motion. (*Id.*) The Court also

indicated that the Government may submit a response to the instant motion. (*Id.*)

## ARGUMENT

The decision to grant a motion for reconsideration, pursuant to RCFC 59, "lies largely

within the discretion of" this Court. *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577,

1583 (Fed. Cir. 1990). An RCFC 59 motion must be supported "by a showing of extraordinary

circumstances which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir.

2004). To prevail, an RCFC 59 movant "must point to a manifest error of law or mistake of

fact." *Pac. Gas & Elec. Co. v. United States*, 58 Fed. Cl. 1, 2 (2003). The movant must show:

(1) the occurrence of an intervening change in the controlling law; (2) the availability of

previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest

injustice. *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006). But, "[r]eviving unsuccessful

arguments and/or making new arguments not previously presented is impermissible."

*Tamerlane, Ltd. v. United States*, 81 Fed. Cl. 511, 512 (2008). An RCFC 59 motion "is not

intended to give an unhappy litigant an additional chance to sway the [C]ourt." *Id.*

Mr. Oberstein's motion should be denied, because he cannot overcome his burden to

---

[1] Mr. Oberstein's counsel inadvertently omitted his signature from the motion for
protective order. Accordingly, he filed a corrected motion on January 25, 2013, that was
substantially identical to the original motion. (*See* Dkt. No. 8.)

show "extraordinary circumstances which justify relief." Mr. Oberstein claims primarily that reconsideration is necessary to prevent manifest injustice. *See* Mot. at 2-3. In support, Mr. Oberstein alleges that: (1) his former counsel included "false and confidential information" in the complaint without Mr. Oberstein's knowledge or consent, and thus the parties' briefings regarding the motion for protective order contained "factual inaccuracies which may have misinformed the Court"; (2) Mr. Oberstein "was not aware of any proceedings relating to the Motion for Protective Order"; and (3) his former counsel failed to file a reply brief in support of the motion for protective order. *Id.* at 1-3.

Mr. Oberstein fails to establish that manifest injustice would result absent reconsideration of the Court's ruling. Where a party seeks reconsideration due to manifest injustice, that party must demonstrate an injustice that is "apparent to the point of being almost indisputable." *Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007); *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002) (defining "manifest" as "clearly apparent or obvious"). As an initial matter, notwithstanding his claim that his complaint contains falsehoods, Mr. Oberstein has made no attempt to amend his complaint. Even assuming the claimed falsehoods as true, any resulting error cannot be imputed to the Government. Mr. Oberstein predicates his claim of manifest injustice on the alleged acts or omissions of his former counsel. However, "because the attorney is the [client]'s agent when acting, or failing to act, in furtherance of the litigation [,] the [client] must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Indeed, the general rule in civil litigation is that "retained counsel's error is imputed to the client." *Pitts v. Shinseki*, 700 F.3d 1279, 1284 (Fed. Cir. 2012). Any purported errors by counsel "do not authorize the loser to litigate from scratch against the original adversary." *Id.* Accordingly, the alleged shortcomings of Mr. Oberstein's former

counsel fail to warrant reconsideration of Mr. Oberstein's request for a protective order.

Even if Mr. Oberstein were not bound by his complaint, as drafted by his former counsel, any supposed "factual inaccuracies" therein did not lead to a ruling that amounts to manifest injustice. In his motion, Mr. Oberstein identifies three supposed inaccuracies in the complaint: (1) Mr. Oberstein was still on active duty in 2013; (2) he was disenrolled from USUHS "for the reason of ███████████[2] and (3) ███████████. Mot. at 3, 5. However, none of these supposed inaccuracies have any bearing on whether the Court's denial of a protective order was caused by a "manifest error of law or mistake of fact." *See Pac. Gas & Elec.*, 58 Fed. Cl. at 2. Indeed, the Court includes *none* of these supposed inaccuracies in its March 12, 2013 Order – other than stating, as background information, that "plaintiff was 'disenrolled' ███████████" (Dkt. No. 10, at 1.)

Moreover, these supposed inaccuracies have no bearing on the fact that "privacy protection does not generally extend over the individual's name." *See Tech Sys., Inc. v. United States*, No. 10-877C, 2011 WL 4374008, at *1 (Fed. Cl. Sept. 19, 2011). As this Court noted in its Order, "the mere fact that [disclosure] may lead to a litigant's embarrassment . . . will not, without more, compel the [C]ourt to seal its records." (Dkt. No. 10, at 3 (citation omitted).) Even as it acknowledged the "credibility of the particularized personal harm plaintiff asserts," this Court nonetheless concluded that this case does "not involv[e] protected information." (*Id.* at 3-4.) Mr. Oberstein's highlighting of these supposed inaccuracies does nothing to change that fact, and accordingly, the Court's ruling caused no manifest injustice to Mr. Oberstein.

---

[2] ███████████████████████████

4

Finally, Mr. Oberstein devotes a significant portion of his motion to arguing that good cause exists for granting a protective order in this matter. *See generally* Mot. at 3-8. He contends that his former counsel "inaccurately articulated the reasons for why good cause exists to redact portions of the [record]." *Id.* at 2. In so doing, he attempts to revive arguments that either were presented or could have been presented in his original motion, or that could have been presented in a reply brief (had one been filed). But, Mr. Oberstein should not be permitted to present arguments "based on evidence that was readily available at the time the original motion was heard." *See Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 301 (1999).

Even to the extent that Mr. Oberstein raises new arguments and presents new facts, those fail to warrant reconsideration. Mr. Oberstein contends that the supposed falsehoods in his complaint "are now contained in [the] record and are widely searchable over the internet." Mot. at 5. However, Mr. Oberstein's own actions belie such a purported concern. As we noted in our brief opposing the original motion, and as the Court acknowledged in its Order, Mr. Oberstein (with his former counsel) disclosed this dispute to the public on multiple occasions, including the filing of his complaint. (*See* Dkt. No. 6, at 2-3; Dkt. No. 10, at 2.) Then, Mr. Oberstein *himself* voluntarily disclosed this matter to the public by filing the instant motion, without any attempt or request to place it under seal. Mr. Oberstein claims that, after the complaint was filed, he asked his former counsel why it contained the supposed falsehoods. Yet, until now, Mr. Oberstein has not attempted to correct that information. Moreover, Mr. Oberstein claims that he was not informed of any activity in this matter, including the original motion, until late March 2013 – after the Court issued its ruling, and more than four months after the complaint was filed. Mot. at 1. Despite expressing concern over the possibility that *others* may find damaging information online about him, Mr. Oberstein apparently has made little effort to protect that information (or

5

keep tabs of his former counsel's attempts to do so).  Accordingly, Mr. Oberstein's expressed

concern over others learning about supposed falsehoods in the does not give rise to an issue

warranting reconsideration.[3]

Mr. Oberstein also attempts to present new evidence that he "applied for and was selected

for a position as a civilian running a Navy medical program, but was recently told that he no

longer had the position, once this particular lawsuit was made public."  Mot. at 6.  Even putting

aside that Mr. Oberstein provides *no* support for his attempt to connect this lawsuit with his

losing that position, Mr. Oberstein's contention fails for the same reason that the other proffered

new evidence fails:  he fails to demonstrate how the Court made a "manifest error of law or

mistake of fact" as to this information.  Indeed, in denying a protective order, the Court relied in

no way upon this or the other information cited by Mr. Oberstein in the instant motion.

Ultimately, through his motion, Mr. Oberstein seeks to reargue this case "upon the sole

ground that [he] is dissatisfied with the conclusions reached by the [C]ourt."  *See White

Mountain Apache Tribe v. United States*, 9 Cl. Ct. 32, 35 (1985).  As that is an impermissible

ground for seeking reconsideration, Mr. Oberstein's motion should be denied.

---

[3] For the same reasons, Mr. Oberstein's claims regarding the supposed falsehood of his
███████████ and active-duty status, *see id.* at 5-6, fail to warrant reconsideration.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Mr.

Oberstein's motion for reconsideration.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

DANIEL G. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 616-9322
Fax:  (202) 307-0972
Danny.Kim@usdoj.gov

OF COUNSEL:

Maj SEAN D. SCHROCK, USMC
LT MATTHEW ROUSH, JAGC, USN
Office of the Judge Advocate General
General Litigation Division (Code 14)
U.S. Department of the Navy
1322 Patterson Avenue SE, Suite 3000
Washington Navy Yard, DC  20374

Dated:  April 22, 2013

Attorneys for Defendant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify under penalty of perjury that on April 22, 2013, I caused to be served by

United States mail (First-Class, postage prepaid), a copy of "DEFENDANT'S OPPOSITION TO

PLAINTIFF'S MOTION FOR RECONSIDERATION," to the address listed below:


JACOB OBERSTEIN
10101 Grosvenor Place, Apt. 904
Rockville, MD  20852
Tel:  (347) 526-4399

# Exhibit H

ORIGINAL

FILED

IN THE UNITED STATES COURT OF FEDERAL CLAIM

MAY  7 2013

U.S. COURT OF
FEDERAL CLAIMS

| | | |
|---|---|---|
| JACOB OBERSTEIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-840C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

By leave of the Judge

## REPLY TO
## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, Jacob Oberstein, pro se, hereby moved this Court, pursuant to RCFC 54 and

RCFC 59, on April 1, 2013, to reconsider its order of March 12, 2013, denying plaintiff's Motion

for Protective Order.  Defendant submitted an opposition to Plaintiff's Motion for Consideration

on April 22, 2013.  Plaintiff respectfully submits this reply to address Defendant's claims in

opposition.

1. Reconsideration is Warranted in Order to Prevent Manifest Injustice.

The Government attempts to distort the grounds under which plaintiff seeks

reconsideration by claiming that plaintiff "seeks to reargue this case 'upon the sole ground that

[he] is dissatisfied with the conclusions reached by the [C]ourt.'"  (Defendant's Opposition to

Motion for Reconsideration, at 6).  Plaintiff does not seek reconsideration due to any alleged

dissatisfaction with the Court's conclusions, but instead seeks reconsideration on the basis that

the Court's ruling was manifestly unjust due to the Court's lack of awareness of the

circumstances described herein and in plaintiff's Motion for Reconsideration.  The only way to

explain why a ruling is manifestly unjust is to provide explanations to points addressed in the

Court's order – explanations which the Government attempts to describe as "the loser litigat[ing]

from scratch against the original adversary." (Defendant's Opposition, at 3). Plaintiff maintains

that manifest injustice exists with regard to the Court's order of March 12, 2013, because this

Court likely understood that plaintiff's Motion for Protective Order was made with plaintiff's

consent and under advice of former counsel. Furthermore, manifest injustice exists based upon

the inaccurate information provided by the Government in its Opposition to Motion for

Protective Order, and relied upon by the Court in its ruling. Plaintiff's Motion for

Reconsideration addressed the points discussed in the Court's order which weighed against

granting the protective order. Those points are: 1) "Plaintiff did not file a Reply;" 2)

"Defendant's comment that any future medical licensing would reveal plaintiff's prior

disenrollment and attendant history was not refuted by plaintiff;" 3) "Plaintiff's noted

employment as a Medical Radiation Officer also weighs against harm;" 4) "in endeavors outside

of medical employment, the relevance and potential harm of prior uncompleted medical school

has not been established;" and 5) that "plaintiff's Complaint contains names of other service

members in assertedly the same situation." (ECF No. 10, Court's Order of March 12, 2013, at 3).

The Government claims that plaintiff "fails to establish that manifest injustice would

result absent reconsideration of the Court's ruling." (Defendant's Opposition to Motion for

Reconsideration, at 3). Plaintiff disagrees, in that it is apparent or obvious that the case was

grossly neglected by former counsel, and absent reconsideration, the Court will have made a

decision based upon a series of false conclusions. Because plaintiff was kept in the dark about

these proceedings, and given former counsel's gross negligence, any readily available

information was never properly heard.

Additionally, the Government confuses the court by claiming that the "factual

inaccuracies" cited by plaintiff in its Motion for Reconsideration "did not lead to a ruling that

amounts to manifest injustice." (Defendant's Opposition to Motion for Reconsideration, at 4).

However, plaintiff cited these factual inaccuracies in its Motion for Reconsideration to provide,

in addition to manifest injustice, reasons why good cause exists to grant the protective order,

should the Court find that manifest injustice exists.

2. Attorney Error Should Not be Imputed to Plaintiff.

In its Motion in Opposition to Plaintiff's Motion for Reconsideration, the Government

argues that plaintiff "must bear the risk of attorney error" (citations omitted).  However, the

Government fails to distinguish between an attorney acting *without authority* of his client and an

attorney with authority to act on his client's behalf.  *See Yapp v. Excel Corp.*, 186 F.3d 1222

(10th Cir. 1999).  "Litigation mistakes that a party could not have protected against, such as

counsel acting without authority," is a proper basis under which a court may provide relief for

such unauthorized conduct.  *Id.* at 1231.  Nor does the Government distinguish between an

attorney's "error" versus conduct that rises to the level of gross negligence.

Several circuit courts have acknowledged in civil cases that a client is not responsible for

the gross negligence of his attorney.  *See Comm. Dental Svcs. v. Tani*, 282 F.3d 1164 (9th Cir.

2002).  Gross negligence includes "conduct on the part of a client's alleged representative that

results in the client's receiving practically no representation at all," such as "misleading him and

depriving him of the opportunity to take action to preserve his rights." *Id.* at 1171.  An

attorney's gross negligence also includes "explicitly represent[ing] to [a client] that the case was

proceeding properly." *Id.*  Where an attorney "misled the client by reassuring him that the

litigation was continuing smoothly when in fact it was suffering severely from lack of attention,"

gross negligence was found. *Jackson v. Washington Monthly Co.*, 569 F.2d 119, 123 (D.C. Cir.

3

1977). In *Jackson*, the court noted that, with regard to the plaintiff's attorney's gross negligence, the district court "could not have been aware of these all-important circumstances when it acted," thereby necessitating relief under Rule 60(b). *Id.* at 123-24. Additionally, an attorney who "fail[s] to file oppositions to motions," informs a client that there is "no basis for filing an appeal," and "implie[s] that such an action would be useless," commits gross negligence and has "virtually abandoned" his client. *Slama v. City of Madera*, No. 1:08-cv-00810-AWI-SKO, 2011 WL 3667334, at *10-11 (E.D. Cal. Aug. 22, 2011). Relief for the aggrieved client is further solidified where "little if any prejudice has befallen the other party to the litigation." *Jackson*, 569 F.2d at 123.

Here, plaintiff was left completely in the dark about his former counsel's activity in this matter. For over a year prior to former counsel's filing of the Complaint, plaintiff had repeatedly inquired as to the status of the case and requested a copy of the draft complaint for review prior to filing. Over the course of former counsel's representation, he employed several junior attorneys to whom he assigned this case. On multiple occasions, those attorneys, and former counsel himself, reassured plaintiff that his confidential information would be maintained. At one point, former counsel even went so far as to inform plaintiff that the complaint would be filed in the name of "John Doe." Plaintiff repeatedly made such requests for confidentiality due to privacy concerns. Once the Complaint was filed, plaintiff was in disbelief that former counsel released the Complaint without plaintiff's review, breached his confidential information, and included falsehoods and inaccuracies in the Complaint. Thereafter, an associate in former counsel's office indicated she would "research" a remedy for the situation. Despite numerous follow-up phone calls and emails, plaintiff was repeatedly told there were "no new updates" on the case, other than the fact that the Government's answer to the Complaint was due by April 5,

2013. In fact, during the time plaintiff was told there were "no new updates," and that former counsel was waiting for the Government's answer, former counsel had filed a Motion for Protective Order, a corrected motion, and had received the Government's opposition. And yet, on February 4, 2013, during another such inquiry as to the status of the case, *three days after former counsel missed the deadline to file a reply brief,* plaintiff was again told there were "no new updates." Naturally, plaintiff was shocked when on March 21, 2013, plaintiff received a copy of the Court's order. It was only at that point that plaintiff began researching the proceedings in the case, and his options for moving forward in this matter, as up until that point, plaintiff was under a good faith belief that former counsel was acting in plaintiff's best interest. Until that time, plaintiff had no reason to independently research the docket in this matter in order to discover such activity, and indeed most clients would believe that to be unnecessary while under representation of retained counsel and following multiple assurances from counsel. During a phone conversation following the March 21st discovery, former counsel told plaintiff that there was "no point" in filing a reply brief to Defendant's Opposition to Motion for Protective Order. In other communications following plaintiff's discovery of former counsel's gross negligence, former counsel admitted that the case was in fact put on the back burner - in other words, abandoned - while former counsel pursued prestige and notoriety as one who represented members of the military.

Cases cited by the Government discuss attorney error imputed to the client where the client was arguing the constitutional right to an attorney and a deprivation of his liberty interest due to ineffective assistance of counsel. *Pitts v. Shinseki,* 700 F.3d 1279, 1284 (Fed. Cir. 2012). Plaintiff here does not argue a due process violation as a result of his attorney's conduct.

This Court has discretion to provide equitable relief when justice so requires.  The reasoning for granting relief under Rule 60(b) should be extended to the context of motions for reconsideration under Rule 59 in order to prevent manifest injustice.  The purpose of Rule 60(b) is to preserve the "incessant command of the court's conscience that justice be done in light of all the facts," and as such the rule "should be liberally construed in order to do substantial justice." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).  Similarly, the purpose of a motion for reconsideration under Rule 59 is to prevent a litigant from suffering "manifest injustice" based upon "error of law or mistake of fact." *Matthews* v. *United States*, 73 Fed. Cl. 524, 526 (2006).  This is especially necessary where the "remedy" of a malpractice action against former counsel will not serve to alleviate the consequences of former counsel's gross negligence, namely the breach of confidential information to the public.  Additionally, "a malpractice action cannot restore retroactively" plaintiff's reputation or alleviate the irreparable harm caused by former counsel's conduct. *Comm. Dental Svcs. v. Tani*, 282 F.3d 1164, 1171 (9th Cir. 2002).  For these reasons, plaintiff respectfully requests that this Court prevent plaintiff from bearing the heavy and unjust consequences of former counsel's conduct.

3. Defendant Has Abandoned its "Public Interest" Argument.

The Government devoted a significant portion of their Opposition to Plaintiff's Motion for Protective Order toward arguing "the public's interest in having access to these proceedings." (ECF No. 6, at 4).  The Government has abandoned that argument at this juncture.  The Government has not refuted plaintiff's position in his Motion for Reconsideration that the redaction of plaintiff's name does not in any way inhibit or diminish the right of public access to necessary information (Plaintiff's Motion for Reconsideration, at 6).  Instead, the Government

claims that plaintiff cannot "present arguments 'based on evidence that was readily available at

the time the original motion was heard.'" (Defendant's Opposition to Motion for

Reconsideration, at 5). Plaintiff maintains his position that his name is not "vital to claims made

in litigation" and therefore should not be revealed. *Doe v. Bell Atl. Business Sys. Servs.*, 162

F.R.D. 418, 420 (D. Mass. 1995). Plaintiff also stresses that the information contained in the

Motion for Reconsideration was not included at the time the original motion was heard due to

former counsel's gross negligence.


4. <u>Defendant Did Not Explain its Concession to Seal all Future Filings.</u>

   The Government has also failed to explain its concession in which it would be willing to

accept a Court order that the parties make all future filings under seal (*see* ECF No. 6, at 5; *see*

*also* Plaintiff's Motion for Reconsideration, at 7). Plaintiff maintains that his request for

redaction protects the public interest and right to access far more than the Government's

suggestion to seal future filings entirely. Plaintiff respectfully requests that this Court order

either redaction of plaintiff's name from the entire record, or in the alternative, that the entire

record be sealed.[1]


5. <u>Plaintiff Made Every Effort to Protect his Information.</u>

   The Government claims that plaintiff "has made little effort to protect [his] information

(or keep tabs of his former counsel's attempts to do so)." (Defendant's Opposition to Motion for

Reconsideration, at 5-6). Plaintiff has made numerous and ongoing efforts to protect

confidential information in this matter. As stated above, prior to former counsel's filing of the

---

[1] Plaintiff respectfully extends his request for redaction of his name to those service members whose names were revealed in the Complaint, as a result of former counsel's negligence.

Complaint, Plaintiff had numerous conversations in an effort to protect his information.  Once

Plaintiff read the contents of the Complaint, one day after the Complaint was filed, and the same

day he was provided notice from former counsel of its filing, Plaintiff objected to former

counsel's breach of confidential information and the inclusion of false information.  Despite

several requests for updates, former counsel did not provide Plaintiff with information of any

proceedings, until March 21, 2013, nearly ten days after this Court issued its order denying a

Motion for Protective Order which was unknown to Plaintiff in the first place.  Plaintiff only

came to realize the gravity of the situation on March 21, 2013, and since then has been tirelessly

researching the law in order to protect himself in the maximum capacity afforded under the law.

Additionally, the information specified under RCFC 5.2(a) may be independently

redacted at the discretion of a party.  However, redaction of additional information under RCFC

5.2(e) may only be redacted for good cause as found by this Court.  It is for this reason that

plaintiff awaits a ruling by the Court as to whether his protected information may be redacted, as

such information does not include plaintiff's "social security number, taxpayer-identification

number, or birth date, the name of an individual known to be a minor, or a financial account

number."  RCFC 5.2(a).


6. Plaintiff Never Stated a Reason for Disenrollment.

The Government's Opposition to Motion for Reconsideration contains a footnote in

which it suggests that based on "a sworn affidavit indicating that [plaintiff] ███████████

███████████ and that thereafter, "USUHS recommended his disenrollment," such

failure was in fact the reason for disenrollment. (Defendant's Opposition to Motion for

Reconsideration, at 4).  In fact, Plaintiff *himself* never revealed the definitive reason(s) for

disenrollment. The affidavit referenced by the Government was compiled from documents

supplied by plaintiff to former counsel at former counsel's request, in order to explain to former

counsel the events leading up to proceedings before the BCNR. At the time, former counsel

advised plaintiff that such information would be helpful to display to the BCNR that no character

issues were the reason for disenrollment. What the affidavit in fact indicates is USUHS'

subjective treatment of its students, and that Plaintiff was treated differently than other students

████████████████████████████████ The affidavit never stated the reason

for disenrollment. Although the Government, like some administrative figures, is welcome to

make the inference that ████████████ was the reason for disenrollment, plaintiff never

made such statements. In fact, USUHS lacks disenrollment policy consistent with civilian U.S.

medical schools. USUHS has retained students that ████████████████

so to say that a student was disenrolled for ████████████████ is questionable. In fact,

recommendations for plaintiff's disenrollment were made prior to ████████████████

Additionally, USUHS never informed plaintiff that ████████ was the reason for his

disenrollment. Plaintiff's affidavit dated April 2011, coincides with an academic review

publication released in June 2011, which was approved by the Office of the Secretary of Defense

in response to the Fort Hood Massacre at the hand of a USUHS graduate. The report included

"recommendations on policies and procedures for disenrollment," including that USUHS "revisit

probation, deceleration, and disenrollment policies to ensure that these processes are *objective

and uniformly implemented*" (emphasis added)[2]. Plaintiff has a good faith basis and possesses

strong circumstantial evidence that other factors were involved in the disenrollment decision, all

---

[2] *See* http://www.usuhs.mil/vpe/pdf/2011JuneFindingsRecommendations.pdf.

of which has no bearing on this case and only serves to detract from plaintiff's substantive claims in this suit.

7.  Plaintiff Intends to Seek Leave to Amend the Complaint.

The Government claims that no attempts have been made to amend the Complaint in this matter.  Plaintiff respectfully places emphasis on the fact that it has been merely one month since he has become a pro se litigant, and that leniency is usually afforded to pro se parties when it comes to procedural matters.  *See Robinson v. Brown*, 111 F.3d 142 (Fed. Cir. 1997).  This is especially applicable where plaintiff has had the task of simultaneously taking over representation from former counsel, learning the law, and timely drafting and filing legal documents.  Plaintiff has every intention of seeking leave of this Court to amend the Complaint, and such a request is forthcoming, at which time plaintiff will respectfully request that the Court grant his motion for leave to amend the Complaint.

For the foregoing reasons, plaintiff respectfully moves this Court to reconsider its order of March 12, 2013.

Respectfully submitted,

Dated: May 2, 2013

Jacob Oberstein
*Pro Se*
10101 Grosvenor Pl., Apt. 904
Rockville, MD 20852
Tel: (347) 526-4399
Email: Jacob.Oberstein@yahoo.com

10

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply to Defendant's Motion in Opposition to Plaintiff's Motion for Reconsideration in the above-captioned matter was served on Defendant, United States, on May 2, 2013, via U.S. first-class mail to:

Daniel G. Kim
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044


JACOB OBERSTEIN
*Plaintiff, Pro Se*
10101 Grosvenor Pl., Apt. 904
Rockville, MD 20852
Tel: (347) 526-4399
Email: Jacob.Oberstein@yahoo.com

Exhibit I

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JACOB OBERSTEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 12-840C |
| | )   (Senior Judge Merow) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

FILED

MAY 3 0 2013

U.S. COURT OF
FEDERAL CLAIMS

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff, Jacob Oberstein, pro se, respectfully moves this Court, pursuant to RCFC 15, for leave to file an amended complaint. The new complaint will account for significant corrections to factual and other inaccuracies contained in the original complaint. Plaintiff respectfully requests that this Court grant him ninety days to file an amended complaint for the reasons set forth below.

1. Background

On March 26, 2013, plaintiff's former counsel was fired immediately following plaintiff's discovery of former counsel's abandonment of plaintiff and gross negligence in handling this matter. Subsequently, plaintiff filed a Motion for Reconsideration of this Court's March 12, 2013 order, a reply to defendant's opposition to plaintiff's motion for reconsideration, and a response to defendant's motion for judgment on the administrative record and motion to dismiss. In addition to the initial discovery of the injustice caused by former counsel's inclusion of false, confidential, and factually inaccurate material in the complaint, plaintiff, through learning the law by having to represent himself as a pro se party, became aware of further injustice caused by former counsel which plaintiff would like to correct by filing an amended

complaint. These additional injustices associated with the original complaint filed by former counsel without plaintiff's consent include the insertion of material from briefs of other parties, misapplications of the law, contradictory arguments, and a significant amount of irrelevant material and flawed arguments which serve no purpose other than to confuse the Court and persist as a forum for distracting arguments. Plaintiff will highlight several examples of former counsel's incoherence in drafting the complaint and deviation from plaintiff's instructions with regard to the claims that were to be set forth in the complaint.

2. Plaintiff Meets the Standard for Obtaining Leave to File an Amended Complaint

Plaintiff respectfully requests that this Court grant him ninety days to file an amended complaint. Pursuant to RCFC 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The decision to grant leave to amend rests within the court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971); *Centech Group, Inc. v. United States*, 78 Fed. Cl. 658, 659 (2007). Unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial. *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).

The United States Supreme Court explained the purpose of Rule 15, stating that, "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave

2

sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed. Cir. 1992).

Here, the interests of justice and judicial economy will be served by having all allegations properly before the Court. Additionally, defendant will not suffer any undue prejudice by the Court's allowance of the proposed amendments to the complaint. An amended complaint would not result in additional preparation to defend against new facts or theories in this case. Defendant cannot be prejudiced, or caught off guard, since the defendant has first-hand knowledge of the roles that they played in this matter, and all arguments to be included in the amended complaint have been addressed in other court filings.

Furthermore, plaintiff's request to file an amended complaint is not futile as plaintiff has alleged sufficient facts to state a claim for relief that is facially plausible. *See Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 464 F.3d 1339, 1354-55 (Fed. Cir. 2006). Plaintiff does not seek to add facts, rather plaintiff seeks to clarify and organize former counsel's poorly articulated claims, correct applications of law and statutes, remove material from briefs of other parties, maintain confidentiality of other persons mentioned by name in the complaint, and omit false, irrelevant, and cumbersome material.

Plaintiff offers the following amendments as it pertains to his request for leave to amend the complaint. First, plaintiff will properly set forth a basis for jurisdiction and judicial review by this Court as stated in his opposition to defendant's motion for judgment upon the administrative record and motion for partial dismissal. Plaintiff will omit blocks of irrelevant text and inapplicable, lengthy, and unauthoritative exhibits that were attached to the original complaint.

3

Plaintiff will remove false and defamatory information such as allegations of  and reasons for disenrollment ███████████. Plaintiff also seeks to correct statements pertaining to his military status as he is no longer on active duty.

Plaintiff will significantly simplify the issues raised in the original complaint to succinctly capture the BCNR's arbitrary and capricious actions as it pertains to their misapplication of Navy Instructions 1421.4D,[1] 1412.6L, and Department of Defense promotion and seniority policies. One of many examples of former counsel's bizarre statements with regard to plaintiff's claims is that SECNAVISNT 1412.6L "discriminates against individuals who enlisted in the Navy through the USUHS program" (Complaint ¶ 43), instead of clearly stating that the BCNR was arbitrary and capricious in their misapplication of SECNAVINST 1412.6L to plaintiff.

Plaintiff will clarify that the BCNR blatantly made false claims regarding a service member in a similar situation as plaintiff, despite having been provided evidence to the contrary by plaintiff. (See Complaint ¶ 34, AR 2, AR 8, and AR 10).[2]

---

[1] In what appears to be a typographical error, defendant, in his reply to plaintiff's response for judgment upon the administrative record and motion for partial dismissal of plaintiff's complaint, references the relevant regulation as SECNAVINST 1421.6D, instead of SECNAVINST 1421.4D in that the application of this instruction was not raised before the BCNR. However, this is inaccurate, as SECNAVINST 1421.4D was the instruction referenced by former counsel in plaintiff's initial BCNR request for relief (AR 24), and which was also wrongfully deemed inapplicable to plaintiff by the BCNR (AR 17).

[2] Defendant, in his reply to plaintiff's response for judgment upon the administrative record and motion for partial dismissal of plaintiff's complaint, mentions plaintiff's contention that the BCNR paid "inadequate…attention to evidence presented," and confuses the Court by applying plaintiff's statement out of context. Defendant confuses this Court by arguing that plaintiff's statement pertains to three previous cases, and misconstrues plaintiff's reference to the BCNR's false reasoning for why plaintiff's situation was not analogous to that of another service member, despite plaintiff having provided evidence to the contrary.

Plaintiff will clarify claims surrounding BCNR's failed obligation to provide plaintiff an opportunity to comment on the NPC's advisory opinion. (Complaint ¶ 47). These claims were clearly discussed with former counsel and were the reason for citing *Prochazka v. United States*, 104 Fed. Cl. 774 (Fed Cl. 2012). Former counsel inarticulated this argument by claiming that the BCNR "failed to provide any logical reasoning behind its denial of the advisory opinion," instead of correctly stating that the BCNR failed to provide plaintiff with the advisory opinion before denying relief. (Complaint ¶ 47). It is obvious that the BCNR did not deny the advisory opinion, and it is also obvious that the BCNR did not furnish the NPC opinion to plaintiff before rendering its decision. This is simply another depiction of former counsel's negligence which plaintiff must correct.[3]

Plaintiff also seeks to properly claim that the BCNR failed to explain why it refused to adopt the decisions of military correction boards which relied on the provisions that are now contained in SECNAVINST 1412.6L beyond simply stating that it does not apply to USUHS students.[4]

---

[3]Defendant, in his reply to plaintiff's response for judgment upon the administrative record and motion for partial dismissal of plaintiff's complaint, insinuates that the NPC advisory opinion furnished to the BCNR and the recommendation of partial relief was not adverse. The facts are that the date of rank adjustment recommended by NPC was adverse in that full relief was denied. Full relief was denied for adverse reasons, and a remedy for partial relief may have been extended because otherwise plaintiff would arguably have been the longest serving Ensign in the U.S. Navy.

[4] Defendant's arguments suggest that plaintiff was removed from the RASL. If true, the lack of RASL status may render plaintiff's situation different than those members cited in similar correction board decisions. However, plaintiff maintains his position that he was in the RASL as illustrated by: his designator codes during the periods in question, the lack of methods for removing USUHS students such as plaintiff from the RASL despite the existence of actual Navy instruction dictating specific methods for transferring members from the RASL, and the absence of required Navy administrative procedures in the form of Oaths of Office which accompany every officer appointment. Furthermore, despite plaintiff's former uncertainties whether he was unknowingly removed from the RASL in May 2006, it is now clear to plaintiff from the

5

Plaintiff will clarify the monetary relief sought in the amended complaint. Because plaintiff was entitled to promotion to O-2 following his time at USUHS (in the RASL) according to SECNAVINST 1421.4D and SECNAVINST 1412.6L, he would like to specifically clarify that he seeks the difference in pay between the O-1 pay, which he already received, and O-2 pay, for the 24-month period immediately following disenrollment from USUHS. Additionally, plaintiff seeks the difference between O-2 pay which he already received, and O-3 pay, in the subsequent 24-month period. Such relief includes the differences in monthly Basic Allowance for Housing pay commensurate to each stated rank respectively. Plaintiff acknowledges that Title 10 prevents the application of time as a student at USUHS from being counted towards pay; thus plaintiff does not seek the pay level depicted on military pay charts that would take into account the three years he spent as a student at USUHS. This means that immediately upon disenrollment from USUHS, plaintiff was to receive O-2 pay (commensurate with his earned rank stipulated in 1421.4D and 1412.6L) with *less than* two years of service as depicted on

---

administrative record, and after examining the Navy's methods of designating appointments via designator codes, that plaintiff held Reserve Officer designator codes from June 2004 until December 2009, as according to the Navy's own manuals, designator code 197X is authorized for Reserve Officers only. *See* AR 11; *see also* http://www.public.navy.mil/bupers-npc/reference/noc/NOOCSVol1/Documents/Manual%20I%2041_PT_A%20(DESIG).pdf. Additionally, the BCNR, in rendering its April 27, 2011 opinion acknowledged that plaintiff held the Reserve Officer designator code of 1975 from June 21, 2004 to at least June 5, 2007 (AR 2), a period greater than the 24-month period for promotion indicated in SECNAVINST 1421.4D and SECNAVINST 1412.6L. Insofar as defendant claims a congressional amendment regarding USUHS appointments, defendant, in his reply to plaintiff's response for judgment upon the administrative record and motion for partial dismissal of plaintiff's complaint, clearly articulated Congress' intention that "all *new* officers… be given regular commissions" (citations omitted). However, plaintiff was *not* a new appointment and was already appointed a Reserve Officer at the time of the amendment. Insofar as the BCNR may have evaluated Congressional amendments, plaintiff will show that any construction in that regard fails under Chevron. Plaintiff would also like to further clarify that even if he spent just one month on the RASL, for example, from June 2004 to July 2004, much before any change in legislation and prior to the existence of SECNAVINST 1412.6L, that the BCNR was arbitrary and capricious in their decisions to deny such period of time spent on the RASL from being credited toward plaintiff's promotion.

military pay charts. The "less than two years pay" category takes into account the stipulation in

Title 10 that prevents plaintiff from receiving O-2 pay with "over three years of service" as

depicted on military pay charts, which would have taken into account his years as a USUHS

student.[5]

     Plaintiff, now aware of former counsel's actions, suspects that former counsel was either

not competent to practice law or quantifying material in the complaint without regard for

substance in order to portray to plaintiff that fees were being earned.  Plaintiff suffered greatly at

the hands of former counsel and continues to exert many resources in researching the law so that

his claims may be properly evaluated and justice may be served.  Plaintiff has devoted a

significant amount of time in order to salvage this case, and in doing so, has deprived himself

and his family of many obligations.  Plaintiff still carries the burden of finding employment and

must overcome the accessibility of false and confidential information resulting from this case

that is now readily available to the public, including potential employers, through internet

searches of plaintiff's name.  Plaintiff has not been able to properly care for his infant child and

has had to forego his share of contributions to the care of a medically debilitated member of his

---

[5] Defendant, in his reply to plaintiff's response to motion for judgment upon the administrative record and motion for partial dismissal of plaintiff's complaint, contends that *Boyer v. United States*, 81 Fed. Cl. 188 (2008), applies to this case.  Plaintiff again contends that defendant's reliance on *Boyer* is misplaced, because *Boyer* sought the pay indicated on military pay charts that took into account the four years of service that he spent at USUHS.  Defendant fails to understand the substantive arguments in this very different claim.  To clarify, plaintiff will reiterate in the amended complaint that he is not requesting such pay.  *Boyer* earned O-3 pay with less than two years of service as depicted on military pay charts upon his graduation from USUHS, in the same manner that plaintiff seeks O-2 pay with less than two years of service as depicted on military pay charts upon his disenrollment of USUHS.  *Boyer's* request for O-3 pay with greater than four years of service and was denied  because he was requesting pay credit for his years of service at USUHS contrary to Title 10.  *Boyer* did not have to contest that the Navy deprived him of his earned rank and pay thereof.  He automatically received it upon graduation.  Plaintiff did not receive any promotion following disenrollment despite the application of SECNAVINST 1421.4D and SECNAVINST 1412.6L, and thereby was deprived of his proper rank and commensurate pay.

immediate family. For these reasons, plaintiff respectfully requests a period of ninety days to

amend the complaint, so that he may find competent counsel to assume representation in this

case.

Defendant will in no way be prejudiced if these changes are allowed at this point in the

proceedings. Furthermore, there is no apparent reason for denying the motion to amend, as none

of the factors that may militate against it are present in this case. Consistent with the liberal

standard that applies to motions to amend under Rule 15(a)(2), the Court should therefore grant

plaintiff's motion. The grant of this motion is particularly appropriate here, given the clear

absence of any substantial reason to deny leave to amend the complaint.

Accordingly, in the interest of justice, plaintiff respectfully requests that this Court grant

his motion for leave to file an amended complaint.

Respectfully submitted,

Dated: May 30, 2013

Jacob Oberstein
*Pro Se*
10101 Grosvenor Pl., Apt. 904
Rockville, MD 20852
Tel: (347) 526-4399
Email: Jacob.Oberstein@yahoo.com

8

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion for Leave to File Amended Complaint in the above-captioned matter was served on Defendant, United States, on May 30, 2013, via U.S. first-class mail to:

> Daniel G. Kim
> Trial Attorney
> Commercial Litigation Branch
> Civil Division
> United States Department of Justice
> P.O. Box 480
> Ben Franklin Station
> Washington, DC 20044

JACOB OBERSTEIN
*Plaintiff, Pro Se*
10101 Grosvenor Pl., Apt. 904
Rockville, MD 20852
Tel: (347) 526-4399
Email: Jacob.Oberstein@yahoo.com